Martha McMillan

*v.*

Helen McMillan *et al.*

*Opinion filed February 19, 1900.*

1. Undue influence—*what does not show undue influence in execution of release.* Undue influence in obtaining a release of a mortgage to secure the payment by the mortgagor of a certain annuity to his mother, is not shown by evidence that the son represented to the mother that he desired to sell the land and that she executed the release to enable him to do so.

2. Mortgages—*voluntary release to enable mortgagor to sell with clear title is valid.* A release by a mortgagee under no circumstances of fraud or undue influence, but solely to enable the mortgagor to sell the land with a clear title, may be as valid and binding and be treated the same way as a release given upon payment of the debt.

3. Laches—*when laches will bar relief under bill to revive a mortgage.* A delay of fourteen years in filing a bill against the mortgagor's heirs to revive a mortgage which complainant had voluntarily released will bar relief, where complainant, during such period, had apparently relied upon the mortgagor's personal written undertaking to pay the amount secured and part of the heirs have conveyed their interests to an innocent purchaser.

*McMillan* v. *McMillan,* 84 Ill. App. 441, affirmed.

Appeal from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Vermilion county; the Hon. F. Bookwalter, Judge, presiding.

Lawrence & Lawrence, for appellant:

Joseph G. McMillan, by the terms of his mortgage, became the trustee of an express trust in favor of his mother, and was therefore precluded from dealing with her for his own benefit and to her disadvantage. The holder of a legal title may make himself a trustee by a written declaration of trust on a good consideration. 1 Perry on Trusts, (4th ed.) sec. 38; *Adams* v. *Adams,* 21 Wall. 186.

By assuming, by a writing under seal, to pay his mother the annuity if she should survive the father, the

mortgagor made himself the trustee of an express trust. 1 Perry on Trusts, secs. 73, 82.

If there is any doubt of there being an express trust there is ample proof of an implied trust in favor of appellant.   1 Perry on Trusts, secs. 112, 122.

This trust relation required the utmost good faith on the part of the trustee, and any pecuniary advantage obtained by him over the beneficiary would render the release presumptively fraudulent and void.   Perry on Trusts, sec. 428; *Sands* v. *Sands*, 112 Ill. 230; *Jones* v. *Lloyd*, 117 id. 597.

A son of mature years who deals with a mother of advanced years, where the usual affectionate relations of parent and child exist, and gets from her, without valuable consideration, the release of a legal obligation he owes to her, which is of value to her and also of material value and benefit to him, is presumed to have obtained it by undue influence, and, in the absence of evidence satisfactorily explaining it, the release should be deemed void. *Pope* v. *Dapray*, 176 Ill. 484; Perry on Trusts, sec. 166; *Carter* v. *Tice*, 120 Ill. 268; *White* v. *Ross*, 160 id. 56; *Hoghton* v. *Hoghton*, 15 Beav. 301; *Wade* v. *Pulsion*, 54 Vt. 45; *Gibson* v. *Jeyes*, 6 Ves. 266; *Huguenin* v. *Beasley*, 14 id. 250.

Being an express trust, the doctrines of *laches* and of estoppel do not apply, and neither does the Statute of Limitations.   *Walden* v. *Karr*, 88 Ill. 49; *Railway Co.* v. *Hay*, 119 id. 493; Perry on Trusts, sec. 863.

If the release was secured by undue influence there was constructive fraud, which excludes the defense of *laches.* Perry on Trusts, sec. 229; *Pyon* v. *Bynn*, 5 Ves. 681; *Michaud* v. *Girod*, 4 How. 561; *Prevost* v. *Gratz*, 6 Wheat. 481.

As between trustee and beneficiary, the neglect of the latter to assert a right by an affirmative act will not bar the right.   *Guilfoil* v. *Arthur*, 158 Ill. 600.

*Laches* will not be so strictly regarded if the parties are members of the same family.   *Yeaton* v. *Yeaton*, 4 Ill. App. 579.

H. M. Steely, and Winter & Rearick, for appellees:

A decree dismissing the bill for want of equity is warranted, unless the evidence shows complainant was entitled to the relief prayed. *Kelly* v. *Funkhouser*, 171 Ill. 205.

The finding of the trial court on the facts should be accepted and acted on, unless it appears that the chancellor was clearly in error. *Ragor* v. *Brenock*, 175 Ill. 494.

The most that could be claimed against the release was that it was voidable. If voidable, it must be avoided within a reasonable time.

The release was an executed contract. A consideration is not essential to it if executed voluntarily and with knowledge of the facts. Bishop on Contracts, sec. 81; *Seymour* v. *Mackay*, 126 Ill. 341.

The intention with which a new note is accepted will control as to whether the original is paid and discharged by the acceptance of another in renewal of it; and this may be shown by express agreement or by proof of the attendant circumstances, from which the intention may be inferred. *Bank* v. *Bornman*, 124 Ill. 200.

It is incumbent on the complainant to show that the release was obtained by fraud or was obtained through some mistake of fact. 2 Jones on Mortgages, sec. 966.

It has always been a principle of equity to discourage stale demands. 2 Pomeroy's Eq. sec. 965.

A delay for a less period than that of the Statute of Limitations may be a bar in equity. *Walker* v. *Warner*, 179 Ill. 16.

There should be some cogent and weighty reason why the claim has been permitted to become stale, else equity will decline its aid. *McDearmon* v. *Burnham*, 158 Ill. 55.

Mr. Justice Phillips delivered the opinion of the court:

R. H. McMillan owned certain lands in Vermilion county, which he conveyed to his son, Joseph G. McMillan, and took from the latter a mortgage to secure the

payment to himself, for life, of the sum of $120 per annum, and after his death the same amount to be paid to the appellant, Martha McMillan, the mother of that son, during her life. Subsequently the father died, leaving the mother surviving. On July 12, 1883, about seven years after the death of the father, under some agreement between the mother and the son, the former released the mortgage to secure the payment of the sum of $120 per annum, and accepted from the son an instrument in writing by which he promised to pay her $120 per annum on the first day of March in each year during her life, the release of the mortgage being executed on the same date. On February 8, 1887, Joseph G. McMillan died. On May 16, 1887, Martha McMillan, the mother, filed her claim against the estate of Joseph on the promise in writing made by him to her, claiming as the amount due and unpaid thereon, after allowing all just credits, the sum of $529.25, which was allowed and paid to her by the administratrix of Joseph's estate, January 2, 1888. On April 14, 1897, Martha McMillan filed her bill in equity to revive the said mortgage which she had released in 1883, and to foreclose the same for payments accruing since the time of the filing of her claim, and, in the alternative, for specific relief. The cause was referred to the master to take testimony and report his conclusions, and he recommended that the bill be dismissed. On hearing the court found the equities to be with the appellees, the widow and heirs of Joseph G. McMillan, and entered a decree dismissing the bill. The appellant prosecuted an appeal to the Appellate Court for the Third District, where the decree of the circuit court was affirmed, and this further appeal is prosecuted.

It is contended that the release of the mortgage was obtained by means of undue influence practiced upon the appellant by her son, Joseph. From the evidence appearing in this record we find nothing to show the exercise of undue influence, or any want of ability to protect

her own rights in the appellant. The most that appears is that the son represented that he desired to sell the land, and that she states that she executed the release to enable him to do so. But this is very far from showing the exercise of undue influence.

If the contention of the appellant as to the amount due her from the estate of Joseph was correct, and the amount due at the time of the presentation of the claim was $529.25, which amount was allowed and paid to appellant by the administratrix of Joseph, then, from the time of the execution of the agreement on July 12, 1883, to the time of the allowance of the claim, and its payment, January 2, 1888, nothing had been paid on that agreement, and the appellant stood by the execution of that agreement until April 14, 1897, when this bill was filed, and received nothing on that agreement except the amount paid by the administratrix, and constantly recognized the agreement itself without in any manner relying on the original mortgage. After the death of Joseph two of his heirs conveyed their interests in the real estate to a third person, who was an innocent purchaser. The long delay in filing this bill from the time of the release of the mortgage, and the apparent reliance on the personal undertaking of Joseph, enabled this conveyance to be made, and on no principle of equity could an innocent third person be required to assume a burden which the record showed to have been expressly released by the appellant. To revive the mortgage as to the other heirs would be to compel them to assume the burden of a mortgage to a greater amount than their interest would have been subjected to had that mortgage never been released, and would be inequitable towards them. This results from the original release by appellant, and her *laches* in failing, for a period of nearly fourteen years, to file her bill for relief. It is clear that she was guilty of *laches.*

In determining whether there has been *laches* on the part of a complainant, a court of equity is not necessarily

controlled by the period of limitation as fixed in actions at law.    A delay for a less period than that prescribed by the Statute of Limitations will, according to the circumstances of the case, be held to be *laches* and to bar relief.    (*Williams* v. *Rhodes*, 81 Ill. 571.)    It was held in *McDearmon* v. *Burnham*, 158 Ill. 55 (on p. 62): "When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale, there must be some cogent and weighty reasons presented why it has been permitted to become so.    Good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity.    In the absence of these elements the court remains passive and declines to extend its relief or aid.    It has always been the policy to discountenance *laches* and neglect."    And numerous authorities are there cited to sustain the proposition.

It is not claimed that any fraud or deception was used to induce the release of the mortgage, and no undue influence appearing, it can only be claimed, under this evidence, that the purpose on the part of one was to have the title clear so as to be able to sell, and of the other, to release the mortgage to enable him to do so.    A release made under such circumstances may be as valid and binding, and be treated in the same way, as a release where the mortgage debt has been paid.    As said in *Seymour* v. *Mackay*, 126 Ill. 341 (on p. 354): "The mortgagee may accept less than the full amount in payment of the mortgage and enter a valid release.    If he may accept less than the full amount due he may agree to release for some other good and valuable consideration, and a release entered of record upon such a consideration ought to be binding on the parties and operate in the same way as if full payment had been made."    The consideration for the execution of the release was a valuable and sufficient one.    On no principle of equity jurisprudence could this mortgage be revived or foreclosed.    Neither is there

apparent in this record anything showing a right to any other alternative equitable relief.

We find no error in the judgment of the Appellate Court, and it is affirmed.

*Judgment affirmed.*