# McClay *v.* Western Pennsylvania Gas Company, Appellant.

*Oil and gas lease—Covenant—Sublease.*

A lessee of an oil and gas lease sublet the gas to a gas company stipulating that if oil should be struck that the well should be turned over to the lessee. Oil was subsequently struck but the lessee did not take the well, and the gas company continued operations. Subsequently the lessor and the gas company entered into an agreement in writing. The lessor reduced the royalty on the gas in consideration of which reduction, the gas company covenanted as follows: " Before finally abandoning said well said second party hereby agrees to fit up the same with pumping apparatus and test the capacity of it as an oil well. It is, however, distinctly understood that said test shall not in any way bind said company to continue the operations at said well, but it shall have the option to either operate it for oil or entirely abandon it." Subsequently the gas company abandoned the property without complying with their covenant. *Held,* (1) that evidence was admissible as bearing upon the question of damages, as to the amount of oil found when the well was tendered to and not accepted by the lessee; (2) that it was admissible to show what would have been

the cost of drilling a well at the time the gas company abandoned the property; (3) that the lessor was entitled to more than nominal damages if it should be determined that oil in paying quantities could have been found.

Argued Oct. 22, 1901. Appeal, No. 88, Oct. T., 1901, by defendant, from judgment of C. P. Washington Co., Feb. T., 1901, No. 59, on verdict for plaintiff in case of J. F. McClay v. Western Pennsylvania Gas Company. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Assumpsit for breach of a covenant in an oil and gas lease. Before McIlvaine, J.

At the trial it appeared that in 1885, David McClay leased the oil and gas under 400 acres of land to Frank Howard and H. W. Williams. These lessees subsequently assigned the lease to the Forest Oil Company and certain other persons. On June 15, 1891, the owners of the lease sublet the gas to the Western Pennsylvania Gas Company, but provided in the sublease that in case oil should be found the gas company should forthwith give notice to the lessees who should then have the right to test the well, and accept or refuse it as an oil well. David McClay subsequently died, and the land was divided into four portions, one of which became the property of J. F. McClay, the plaintiff.

In January, 1892, the gas company struck oil. It notified the Forest Oil Company and the other lessees, and the latter after making a test declined to take the well. The rental provided in the original lease to be paid for gas wells was $250 per annum. On January 28, 1895, an agreement was entered into between J. F. McClay and the Western Pennsylvania Gas Company by which the rental was reduced to $175 per annum. In consideration of this reduction the gas company covenanted as follows:

" 3. Before finally abandoning said well, said second party hereby agrees to fit up the same with pumping apparatus and test the capacity of it as an oil well. It is, however, distinctly understood that said test shall not in any way bind said company to continue the operations at said well, but it shall have the option to either operate it for oil or entirely abandon it."

.   .   .

In 1899, the gas company abandoned the well without complying with the covenant.   Under objection and exception the court admitted evidence tending to show the amount of oil production in 1892, and that the said production would have been about the same in 1899.  [1–14]

The court admitted under objection and exception evidence as to the cost of drilling an oil well in 1899.  [15, 16]

The court charged in part as follows:

Then a fourth condition, as it might turn out to be in this case, and a fourth measure of damages, would be this: If the jury find that the defendant company left the well in a condition that it could not be tested, and that the failure was not unavoidable, or if the company left the well when it could have been tested and did not do it, and the plaintiff had no knowledge of that, and the jury find that the well, if it had been tested, would have produced oil in quantities that would have paid the lessee, that is, the Forest Oil Company, to operate it, as well as paid the plaintiff, then the measure of damages would be the value of the well, as you may find it to be, for the time that the lease was to run, and that from some time in September, 1900, until September 5, 1905.

Now, if you adopt this measure of damage you will have to apply your best judgment to the facts as developed here, in ascertaining what the value of that well could be.  Of course one of the first things you would have to determine would be, what would be its probable production.   Of course you cannot fix that to the barrel, and the plaintiff is not bound to show you, to the barrel what it would have produced, but he is bound to produce evidence to show you that it would have produced at least the amount that you may fix upon.   Then after you have got the amount, if there is any evidence here in regard to the price of oil, you can take that into consideration, with the time he would get the royalty under the lease, up until 1905; or if there is any testimony here, gentlemen, as to what a royalty such as would have developed there in 1900, at the time of the breach, would have sold for, running for five years, that testimony can be taken into consideration.  [19]

Defendant's points and answers were as follows:

5. The plaintiff in this case is entitled to recover only nom-

inal damages and this only in the event of showing that any damages have been sustained by reason of the failure of the defendant to test said well. *Answer:* Refused. Whether the damage that the plaintiff is entitled to recover is only nominal depends upon the facts of the case as you may find them, as we have explained in our general charge. [20]

6. That the plaintiff in this action can in no event recover damages to a greater extent than the amount of the difference between the rental upon this well, which had been paid to him immediately prior to the execution of the agreement of January 28, 1895, to wit: $200, and what he was to receive under said agreement, to wit: $175, from the date of said agreement down to the date at which said well was abandoned. *Answer:* Refused. It is a question for the jury, under the instruction given in the general charge, whether the plaintiff's damage shall be limited to $125, the amount he reduced his rental in the five years or not. [21]

Verdict and judgment for plaintiff for $2,000. Defendant appealed.

*Errors assigned* were (1–14, 15, 16) rulings on evidence, quoting the bill of exceptions, (19–21) above instructions, quoting them.

*A. M. Todd,* with him *J. A. Wiley,* for appellant.

*T. F. Birch,* for appellee.

PER CURIAM, January 6, 1902:

We have carefully read and considered the charge of the court, the eighteen assignments of error relating to the admission of testimony on the part of the plaintiff's witnesses, the alleged error in the charge referring to the excerpt in the nineteenth assignment and the refusal of the court to affirm the defendant's fifth and sixth points. We have not discovered in either of the eighteen assignments any cause for a reversal of the judgment, any error in the excerpt from the charge, or in the refusal to affirm the defendant's fifth and sixth points. The charge of the court was carefully presented and considered at every point and the defendants have no cause to complain of the verdict or judgment.

Judgment affirmed.