## Nathaniel P. Daughetee, Appellee, v. The Ohio Oil Company, Appellant.

1. LANDLORD AND TENANT—*implied covenant of oil lease.* In oil leases of the character in question in this case there is an implied covenant that a lessee will proceed with due diligence to ascertain whether or not the demised premises are underlaid with oil and after ascertaining such fact it is the duty of such lessee to proceed with due diligence fully to develop the premises.

2. LANDLORD AND TENANT—*what breach of obligation diligently to develop under oil lease.* If it is shown that there was oil under the demised premises and that a market existed therefor, in order to avoid responding in damages for a failure diligently to develop and market such oil, it devolves upon the lessee to show that the premises could not be developed for oil with profit or that some other cause existed which would relieve such defendant from prosecuting the diligent development and marketing of such product; a cause of action existing in favor of the lessor, may be instituted prior to the expiration of the lease.

Assumpsit. Appeal from the Circuit Court of Clark county; the Hon. M. W. THOMPSON, Judge, presiding. Heard in this court at the November term, 1908. Reversed and remanded. Opinion filed August 5, 1909.

GOLDEN & SCHOFIELD, for appellant.

FRANK T. O'HAIR and DAVISON & BARTLETT, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is a suit in assumpsit predicated upon what is commonly known as an oil and gas lease, for the recovery of damages alleged to have resulted from the failure of the defendant to develop the lands conveyed for oil and to diligently pump and market oil which it is claimed could have been obtained from wells sunk under said lease. A trial by jury resulted in a judgment in favor of the plaintiff for the sum of $5000, to reverse which this appeal is prosecuted.

The declaration consists of four counts. The first count alleges in substance that the plaintiff on June 3, 1904, for the consideration of one dollar, the receipt of which was acknowledged, executed to Hoblitzell & Co. an oil and gas lease on certain land therein described, in Clark county, Illinois, containing 250 acres, with right to enter thereon for the purpose of drilling and operating for oil and gas, and to erect and maintain all buildings and structures and lay pipes necessary for the production and transportation of oil and gas for the term of five years from the date thereof, and as much longer as oil and gas should be found in paying quantities; that by the terms of the lease a test well was to be completed within two years from date of lease, and the plaintiff was to receive one-eighth part of the oil, and $100 per year for gas for each well from which gas should be transported; that said lease was properly filed for record in the recorder's office of Clark county, Illinois; that said Hoblitzell & Co. took possession of the leased premises and drilled a test well and found oil in paying quantities; that it was the duty of Hoblitzell & Co. and their assigns to sink, pump and operate as many wells as were ordinarily and reasonably necessary to secure the oil from said premises and to afford protection to the lines against any well operated on adjoining lands and premises; that Hoblitzell & Co. on November 10, 1905, for a valuable consideration, assigned all their interest in said lease to the defendant, which took possession and sank and drilled five wells producing oil, and thereby became liable to fulfill and carry out the obligations of Hoblitzell & Co. to fairly and fully develop said premises for oil; that the defendant in disregard of its duty and in violation of its undertakings, had wholly failed and refused, and still continued to fail and refuse to fully develop said leasehold by sinking, drilling and operating wells thereon necessarily and ordinarily required for the production of oil thereon in which said premises abound, and which were necessary for the protection of the lines thereof

by wells drilled and operated along the same on adjoining farms and premises, contrary to the full intent and meaning of said lease and the several promises and undertakings of said appellant.

The second count alleges, in a general way, the execution of the lease to Hoblitzell & Co.; the assignment of the same to the defendant; its entry upon the premises and liability under the lease, and refusal to perform thereunder.

The third count, after alleging the execution and assignment of the lease as in the first count, alleges that Hoblitzell & Co. entered upon and ascertained that said lands were underlaid with oil, and that it was their duty to drill, sink, pump and operate as many wells thereon as would be reasonably necessary to secure oil from said lands and protect the lines, etc., and to at once deliver and market all such oil produced as aforesaid; that by virtue of the assignment of the lease and the entry of the defendant thereunder, the defendant became bound to carry out the duties, obligations and promises of Hoblitzell & Co. under said lease, but that it had failed and continued to fail to fully develop said premises for oil, etc.

The fourth count alleges that the defendant was engaged in the business of producing and purchasing oil and gas, was a tenant of the plaintiff and in possession of certain lands belonging to the plaintiff there situate under a certain lease theretofore made by plaintiff to Hoblitzell & Co., and by them assigned to the defendant, for the purpose of producing oil thereon and marketing the same, and that in consideration thereof the defendant promised the plaintiff that it would develop said lands for oil so as to secure as much oil from the lands so demised as might be obtained with profit; and protect the lines thereof from extraction of oil thereunder by wells drilled along the lines thereof on adjacent farms and lands, and according to the customs of the country where said lands are situate, and deliver to the plaintiff in the pipe line

with which defendant connects its wells one-eighth of all the oil produced thereon; and that the defendant then continued tenant to plaintiff as aforesaid upon said lands from the 10th day of · November, 1905, hitherto, but failed to perform its said implied agreement in that behalf, to the damage of the plaintiff, etc.

By the lease in question, which is set out in full in the first and third counts of the declaration, the plaintiff in consideration of one dollar, granted to Hoblitzell & Co. all the oil and gas in and under a tract of land therein described, together with the right to enter thereon at all times for the purpose of drilling and operating for gas and oil and erecting and maintaining all buildings and structures and laying all pipes necessary for the production and transportation of oil and gas, for the term of five years from June 3, 1904, and as much longer as gas or oil was found in paying quantities on said premises, the following, among other conditions:

"Second parties shall within two years from date hereof drill to completion a test well upon said premises, if gas is found in sufficient quantities to transport, second parties agree to pay first party the sum of one hundred dollars per year for the gas product of each well from which gas is transported, payable quarterly, when a market is found for the gas; and first party to have gas free of cost to heat and light one dwelling house, to be transported at first party's cost. If oil be found in paying quantities the first party shall have the one-eighth part of all oil produced and saved from said premises to be delivered in the pipe line with which second parties shall connect their wells."

"The party of the first part grants the further privilege to parties of the second part of the right of way over and across said premises to the place of operating, together with the exclusive right to lay pipes to convey oil and gas, the right to remove any machinery or fixtures placed on said premises by them."

"In case no well is completed on said premises within 24 months from this date the parties of the second

part shall pay to party of the first part a rental at rate of twenty-five cents per acre per year, to be paid annually at close of the first quarter of each such rental year counting from the expiration of said 24 months."

"It is further agreed that in case no paying well is completed on said premises within 5 years from the date hereof this grant shall be null and void, without further agreement of the parties hereto."

"The second parties shall have the right to use sufficient gas and water to run all machinery for operating said well, also the right to remove all its property at any time, but without interference with first party's water supply."

"Upon abandonment by second parties of the premises, or upon expiration of the rights and privileges of the second parties, under the provisions hereof, the second parties agree to execute full release to party of first part."

"The parties of the second part hereby agree to complete one test well in Westfield District No. 1, Clark County, Illinois, on or before the 30th day of September, 1904, or forfeit all rights under this lease."

"It is understood between the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, successors and assigns."

"The said test well shall be commenced within 60 days from date hereof and completed on the 30th of September, 1904."

The first contention argued by counsel for the defendant is that the allegations of the declaration and of each count thereof do not state a cause of action, and are insufficient to support the judgment, even when aided by the verdict. It is insisted that it is sought, without warrant in law, to inject into the lease an implied covenant on the part of the lessee to diligently explore and develop the lands therein conveyed; and further, that if any right of action for the breach of such covenant exists it would not accrue until the expiration of the terms of the lease; and still further,

that if oil or gas was found, the question whether the same was or could be produced in paying quantities, was to be determined by the lessee, whose decision was final and conclusive if made in good faith. We are of opinion that the declaration stated a good cause of action, although defectively. In leases of this character there is an implied covenant that the lessee will proceed with due diligence to ascertain whether or not the premises are underlaid with oil, and after ascertaining such fact it is the duty of such lessee to proceed with due diligence to fully develop the premises (Kleppner v. Lemon, 176 Pa. 502; McKnight v. Gas Co., 146 Pa. St. 185; Aye et al. v. The Philadelphia Co., 193 Pa. 451; Iams v. Gas Co., 194 Pa. 72; Koch's Appeal, 93 Pa. 442; Ray v. Gas Co., 138 Pa. 589; Rorer Iron Co. v. Trout, 83 Va. 397), and when it appears that oil can be produced therefrom in paying quantities, the further duty devolves upon such lessee to within a reasonable time diligently develop the premises for its production. McKnight v. Gas Co., *supra*; McClay v. Gas Co., 201 Pa. 197.

Under the terms of the present lease the question as to whether oil was found in paying quantities was not one for the arbitrary determination of the defendant. If the surrounding conditions were such as would have induced an ordinarily prudent person engaged in like business, to expect a reasonable profit from the sum necessary to be expended in the prosecution of the enterprises, oil may properly be said to have been present in paying quantities. Upon it being shown that there was oil under the leased premises, and that a market existed for the same, in order to avoid responding in damages for a failure to diligently develop and market such oil, it devolved upon the defendant to show that the premises could not be developed for oil with profit to it, or that some other cause existed which should relieve the defendant from prosecuting the diligent development and marketing of such product. Iams v. Gas Co., *supra*. No cogent reasons

are advanced by counsel in support of the suggestion that the plaintiff should be compelled to await the expiration of the lease before asserting his rights thereunder, and we perceive none. If the prescribed conditions were present, it was unquestionably the implied duty of the defendant company to, without unnecessary or unreasonable delay, produce and market the oil underlying the premises, so that the plaintiff might receive the royalties to which he was entitled under the terms of the lease.

The evidence adduced by the plaintiff shows that on June 3, 1904, he executed to Hoblitzell & Co. a lease for the land described in the declaration, for the purpose of having the same explored and developed for oil and gas under the terms and conditions and for the consideration expressed in the lease; that on November 10, 1905, Hoblitzell & Co. assigned said lease to the defendant; that the defendant thereupon took possession of the premises under the terms of said lease, and continued in such possession until the commencement of the present suit; that while Hoblitzell & Co. were in possession of the premises under said lease, they drilled an oil well thereon known as number one, which was capable of producing about sixty barrels of oil per day, and that they afterward drilled two additional wells, which were abandoned; that after the defendant took possession of the premises it drilled four additional wells; that in January, 1907, a pipe line was established, and oil produced from said premises and marketed, upon which royalties were paid to the plaintiff. There was evidence tending to prove that the premises in question, if properly developed, were capable of yielding at a profit a much larger quantity of oil than was in fact produced. The court properly permitted the plaintiff to show that upon the lands of other persons adjoining the premises in question, there had been drilled a much greater number of wells, proportionately, than had been drilled upon the plaintiff's land, all of which were producing

oil in paying quantities, and that the neighboring territory for a distance of several miles in every direction, had been fully developed; and that large quantities of oil had been produced therein which was readily marketed and sold at a profit. The testimony of witnesses experienced and skilled in the oil business tended to show that the premises described in the lease were underlaid with oil-bearing sand, and that to properly develop such premises, at least one well to each ten acres should have been drilled, and that such wells when properly drilled and operated would have produced an average of ten barrels of oil per day. It further appears from the evidence that after the establishment of the pipe line there was and continued to be a market for all oils produced in the vicinity, at the price of from 64 to 83 cents per barrel. No evidence was introduced on the part of the defendant.

The foregoing evidence established a *prima facie* right of recovery, and it was not error to refuse to direct a verdict for the defendant. Upon the question as to the measure of damages, the court, in substance, instructed the jury that in arriving at their verdict they should subtract from the quantity of oil which they found should have been produced from the premises during the period from November 10, 1905 (the date of the assignment of the lease), to May 18, 1907 (the time of bringing the suit), the quantity actually produced and saved, and allow to the plaintiff one eighth of the value of the difference at the market prices during the period in question. This instruction correctly stated the rule as to the measure of damages. It was error, however, to authorize a verdict for royalty upon oil which should have been produced from November 10, 1905. By the terms of the lease the plaintiff was to have one-eighth of all oil produced and saved to be delivered in pipe line. In assessing the damages the period to be considered was that between the time when the pipe line was installed, or should have been installed under the terms of the lease, and the time

of the institution of the suit. The substantial objections to the rulings of the court upon the instructions are, we think, disposed of by the views herein expressed.

For the error indicated the judgment of the circuit court will be reversed and the cause remanded.

*Reversed and remanded.*