NATHANIEL P. DAUGHETEE, Defendant in Error, *vs.* THE OHIO OIL COMPANY, Plaintiff in Error.

*Opinion filed April 23, 1914—Rehearing denied June 3, 1914.*

1. LEASES—*when lessee is required to use reasonable diligence to develop oil and gas lands.* Under an oil and gas lease giving the lessee the exclusive right to explore the land during the life of the lease and if oil or gas be found in paying quantities to pay certain royalties to the lessor, there is an implied obligation on the part of the lessee to use reasonable diligence to develop the demised premises so long as the enterprise can be carried on at a profit; and it is no defense to a suit for a breach of such a covenant to say that the oil and gas are still on the premises and that they may be extracted by somebody in the future, or that the lessee was only required to use good faith in the development of such premises and that he was the sole judge of the extent to which the premises should be developed.

2. SAME—*when oil and gas lease conveys freehold.* An oil and gas lease conveys a freehold estate where the lease provides that the lessee shall hold the premises for a certain number of years and as much longer as gas or oil shall be found in paying quantities on the demised premises.

3. SAME—*when action may be maintained for breach of oil and gas lease.* The lessor of oil and gas lands is not required to wait until abandonment of the premises by the lessee or the expiration of the lease before bringing his action where the lessee violates any of the express or the implied covenants of the lease, which results in damages to the lessor.

4. DAMAGES—*fact that unliquidated damages cannot be exactly ascertained does not defeat action.* In an action for damages re-

sulting from a breach of a contract or a duty imposed by law the damages must be the proximate result of the injury complained of, and the fact that the damages are difficult of exact ascertainment is no defense to the action.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Clark county; the Hon. E. R. E. KIMBROUGH, Judge, presiding.

ABRAM SIMMONS, SAMUEL M. SCHOLFIELD, JAMES W. & EDWARD C. CRAIG, and DONALD B. CRAIG, for plaintiff in error.

FRANK T. O'HAIR, and DAVISON & BARTLETT, for defendant in error.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This suit was brought by defendant in error, Nathaniel P. Daughetee, against the Ohio Oil Company, plaintiff in error, for damages for an alleged failure of plaintiff in error to comply with the terms of an oil and gas lease executed by defendant in error to Hoblitzell & Co. and by said lessees assigned to plaintiff in error. The action is assumpsit, and is based upon the theory that defendant in error has been damaged by the failure of plaintiff in error to develop the land described in the oil lease and to diligently pump and market the oil which it is claimed could have been obtained from wells sunk upon said land. The case was originally tried in the circuit court of Clark county, and a judgment was rendered in favor of the defendant in error for $5000. This judgment was reversed by the Appellate Court for the Third District because of an error in connection with the assessment of damages. The Appellate Court held, in effect, that defendant in error was entitled to recover, and the judgment was only reversed for an error that affected the amount of damages. (*Daughe-*

*tee* v. *Ohio Oil Co.* 151 Ill. App. 102.) A second trial was had before the circuit court without a jury, and a judgment was rendered against plaintiff in error for $2828. This judgment, upon an appeal, was affirmed by the Appellate Court, and the case comes to this court upon *certiorari.*

The declaration is in four counts, each of which is based upon the lease and avers that the original lessees under said lease entered into possession of the premises demised and undertook the development of the same for oil and gas, and that thereafter, on the 10th day of November, 1905, the original lessees assigned all of their right, title and interest to plaintiff in error, and that plaintiff in error thereafter entered upon the demised premises under the lease aforesaid for the purpose of producing and marketing oil and gas, and did afterwards sink and drill nine wells, which were producing oil, and that thereupon it became the duty of the plaintiff in error to fully and fairly develop said premises for oil, which duty the plaintiff in error failed to perform, whereby defendant in error lost the royalty, income and profits that he otherwise would have had and received but for the neglect and failure of plaintiff in error to comply with the terms of the lease.

The evidence shows that at the time the lease in question was executed the defendant in error claimed to own 250 acres of real estate in Clark county, and that on the third day of June, 1904, he executed an oil and gas lease covering all of said real estate, which is described in the lease. It afterwards developed that defendant in error did not own 60 acres of the demised premises in fee and that he held that tract only in trust. There are only 190 acres of land involved in this case. Soon after the execution of the lease Hoblitzell & Co. took possession of the premises and on July 6, 1904, completed the first well. This well was drilled to a depth of 390 feet and oil was struck at a depth of 360 feet. This well was not shot with nitroglycerin, but was closed and never opened or operated by the

original lessees. The evidence of experts shows that this well would have produced thirty barrels of oil each twenty-four hours without shooting, and sixty barrels per day after being shot, for an indefinite period. The original lessees put down two other wells in 1905, both of which proved to be dry holes or non-producing wells and were closed up. These wells, known in the record as Nos. 2 and 3, have never been operated for or produced any oil. After plaintiff in error obtained the lease nine additional wells were drilled between the years 1905 and 1909. These wells were all producers, and the output varied from ten barrels per day to seventy-five barrels each twenty-four hours. The evidence shows that the pay sand increased in thickness going from east to west,—that is, the best wells were those drilled nearest to the western boundary. There are no producing wells in that field east of defendant in error's tract, but west of his tract the oil is produced in paying quantities. The evidence shows the quantity of oil produced by all of the wells on defendant in error's premises from January, 1907, to March, 1911, and the prevailing prices at which the oil was sold for these respective years. The total amount produced upon the defendant in error's premises was 13,339 barrels, which sold on the market for $8734.88. The evidence further shows that to fully and completely develop oil land requires a well for each ten acres. The expense of drilling and completing a well of the depth required on defendant in error's premises was from $1000 to $1200, and the expense of operating a well is $60 per month.

This suit is based on the theory that plaintiff in error was required by the terms of the lease, after a test well had been drilled and oil found in paying quantities, to proceed with reasonable diligence to put down as many additional wells as were necessary to properly develop the premises, and to operate said wells and pay defendant in error the royalty provided for by the lease. Both the trial

and Appellate Courts have found the fact in accordance with the contention of the defendant in error. This court must assume that all controverted questions of fact have been properly decided in favor of defendant in error.

The lease contains the following provisions: "Second parties shall within two years from date hereof drill to completion a test well upon said premises. If gas is found in sufficient quantities to transport, second parties agree to pay first party the sum of $100 per year for the gas product of each well from which gas is transported, payable quarterly, when a market is found for the gas, and first party to have gas free of cost to heat and light one dwelling house, to be transported at first party's cost. If oil be found in paying quantities the first party shall have the one-eighth part of all oil produced and saved from said premises, to be delivered in the pipe line with which second parties shall connect their wells. The party of the first part grants the further privilege to parties of the second part of the right of way over and across said premises to the place of operating, together with the exclusive right to lay pipes to convey oil and gas, the right to remove any machinery or fixtures placed on said premises by them. In case no well is completed on said premises within twenty-four months from this date, the parties of the second part shall pay to the party of the first part a rental at rate of twenty-five cents per acre per year, to be paid annually at close of the first quarter of each such rental year, counting from the expiration of said twenty-four months. It is further agreed that in case no paying well is completed on said premises within five years from the date hereof this grant shall be null and void without further agreement of the parties hereto. The second parties shall have the right to use sufficient gas and water to run all machinery for operating said well, also the right to remove all its property at any time, but without interference with first party's water supply. Upon abandonment by second par-

ties of the premises, or upon expiration of the rights and
privileges of the second parties under the provisions here-
of, the second parties agree to execute full release to party
of first part. The parties of the second part hereby agree
to complete one test well in Westfield district No. 1, Clark
county, Illinois, on or before the 30th day of September,
1904, or forfeit all rights under this lease. It is under-
stood between the parties to this agreement that all con-
ditions between the parties hereunto shall extend to their
heirs, executors, administrators, successors and assigns.
The said test well shall be commenced within sixty days
from date hereof and completed on the 30th of Septem-
ber, 1904."

It will be noted that there is no express covenant or
promise on the part of the lessee to diligently explore and
develop the lands demised, and from this it necessarily re-
sults that if the obligation rests upon the lessee to fully
develop the premises and market the oil or gas found, it
is an implied rather than an expressed obligation. The
lessee had the exclusive right to explore this land for gas
and oil during the lifetime of the lease. So long as the
lease was in force defendant in error had no right to in-
terfere with the development of the premises, either in per-
son or by leasing to others. The lease provides for the
completion of a test well upon said premises within two
years, and if oil or gas be found in paying quantities de-
fendant in error was to receive a certain portion of the
output of these products from his lease. It would be ab-
surd to hold that plaintiff in error's obligation ended when
the test well was drilled, if such test well showed the pres-
ence of gas or oil in paying quantities. Manifestly, it was
contemplated by the parties that if the test well showed
these minerals in paying quantities the lessee would pro-
ceed to drill and operate other wells so long as the business
proved to be profitable. From the nature of the contract,
the subject matter thereof and the situation of the parties,

we agree with the Appellate Court that there is under the terms of this lease an implied obligation on the part of the lessee to use reasonable diligence to develop the demised premises so long as the enterprise could be carried on at a profit, and this conclusion has been reached by other courts under similar circumstances. (*Kleppner* v. *Lemon,* · 176 Pa. 502; *McKnight* v. *Gas Co.* 146 Pa. St. 185; *Aye* v. *Philadelphia,* 193 Pa. 451; *Iams* v. *Gas Co.* 194 id. 72; *Koch's Appeal,* 93 id. 442; *Ray* v. *Gas Co.* 138 id. 589; *Rorer Iron Co.* v. *Trout,* 83 Va. 397; *McClay* v. *Gas Co.* 201 Pa. 197.) The case of *Bradford Oil Co.* v. *Blair,* 113 Pa. 83, is very much like the case at bar in its facts. The court held that there was an implied covenant to·use diligence in developing the premises, and sustained a recovery of damages for a violation of the implied covenant. The question whether under the facts of this case plaintiff in error could have profitably drilled other wells and taken the oil or other minerals from defendant in error's land was one of fact, which has been settled in favor of defendant in error. Assuming that plaintiff in error violated the implied covenant of the lease and that damages have resulted to defendant in error, then it is apparent that the judgment below should be affirmed unless some error of procedure has intervened to the prejudice and injury of plaintiff in error.

Plaintiff in error contends that under the terms of this lease no action can be maintained until the expiration of the lease by its terms. The lease provides that the lessee should. hold the premises for the term of five years, and as much longer as gas or oil is found in paying quantities on said premises. Under the terms of this lease the interest conveyed is a freehold estate, for the reason that it may continue indefinitely. If plaintiff in error's contention on this point be allowed and oil and gas should continue to be found in paying quantities indefinitely, the result would be that defendant in error could not maintain an action at

all for the violation of the covenants of this lease, however negligent plaintiff in error might be in carrying out its terms. The lease is still in force, and may, under its terms, continue indefinitely. When plaintiff in error violates any of the express or implied covenants of the lease which results in damage to defendant in error a cause of action arises in his favor, and he is not required. to wait until the abandonment of the premises or expiration of the lease to bring his action. To so hold would, in effect, deny to defendant in error the benefit of any remedy whatever for the damages that may have been sustained for the violation of the covenants of the lease. The remedy of defendant in error for a breach of the covenants of the lease is not forfeiture, but a right to maintain an action for a breach of the contract. *Keller* v. *Craig,* 128 Fed. Rep. 630; *Core* v. *New York Petroleum Co.* 52 W. Va. 276; *Poe* v. *Ulrey,* 233 Ill. 56.

Plaintiff in error contends that even if a right of action exists, no recovery can be had because the damages are uncertain, remote and speculative. This point is preserved by an exception to the refusal of the trial court to hold as law a proposition embodying plaintiff in error's view upon this point. It is undoubtedly the law that where speculation or conjecture must be resorted to for the purpose of determining whether the injury results from the wrongful act charged or from some other cause, then the law denies the injured party his action for damages. This is only another way of stating the familiar rule that damages must be the proximate result of the injury complained of. This rule was announced by this court in *Indianapolis, Bloomington and Western Railway Co.* v. *Birney,* 71 Ill. 391, which is relied on by plaintiff in error in support of this contention. The right of recovery being assumed, plaintiff in error cannot escape liability because the damages are difficult of exact ascertainment. The nature of the inquiry here is such that it is practically impossible to ascertain with

mathematical certainty the exact amount of defendant in error's damages. This, however, affords no answer to a cause of action resulting from the breach of contract or a duty imposed by law. The unliquidated damages growing either out of breach of contract or the commission of a tort are seldom susceptible of exact measurement. If such exactness were required the law of damages would be of little practical value. The rule is, that while the law will not permit witnesses to speculate or conjecture as to possible or probable damages, still the best evidence of which the subject will admit is receivable, and this is often nothing better than the opinion of well informed persons upon the subject under investigation. (Chamberlayne on Evidence, sec. 2332.) Plaintiff in error does not contend that the court allowed improper and irrelevant evidence to be introduced in regard to the damages. On the first trial of this case complaint was made of erroneous rulings in regard to the damages, and a judgment for $5000 was reversed by the Appellate Court for the alleged error in this respect. Upon the last trial the error committed in the first was obviated and the damages assessed were substantially less.

Plaintiff in error contends that where the lessee has committed no fraud and has acted in good faith, and has not drained oil from lessor's premises by means of wells on other adjacent lands, he is not liable for a failure to drill and operate additional wells if, acting on his own judgment, he believed that it would not be profitable for him to do so; or, differently stated, the contention is that plaintiff in error was the sole judge of the extent to which the premises should be developed, and it is only required to use good faith in order to exempt itself from damages for a failure to properly develop the demised premises. While the lessee undoubtedly has the right to exercise his honest judgment in respect to the extent and manner of development under a lease of this character, still it will

not do to say that his determination is final and not subject to investigation or review. The determination of the disputed questions of fact in this case against plaintiff in error necessarily includes a finding that plaintiff in error did not act as an ordinarily prudent person engaged in like business, in determining the extent to which it should develop the premises and operate wells on the demised premises. To say that a lessee, under a lease of the character involved here, could drill a test well and find that there was a profitable flow of oil and then arbitrarily refuse to proceed to further explore and develop, would be an absurd construction of the contract and lead to results clearly not contemplated by the parties. See *Iams* v. *Gas Co. supra.*

Plaintiff in error finally contends that it is not liable unless it appears that oil and gas have actually been lost to defendant in error by being drawn therefrom through wells on adjacent premises or by some wrongful or fraudulent act of the lessee. This contention cannot be sustained. Defendant in error did not lease his premises merely for the purpose of having a test well drilled and then allow the minerals found there to remain. The contract, as we have seen, required something more of the plaintiff in error. It was its duty to go on and drill additional wells, market the products and pay defendant in error his royalty thereon. This was clearly within the contemplation of the parties and the primary object in making the lease. It is no answer to a suit of this character to say that the oil or gas is still on the premises and may be extracted at some time by somebody in the future. The point is that plaintiff in error agreed to do this in order that the lessor could realize upon the value of these products.

We find no error in this record for which the judgment of the Appellate Court should be reversed, and it is accordingly affirmed.                    *Judgment affirmed.*