JOHN D. McDEARMON *et al.*

*v.*

DYER N. BURNHAM *et al.*

*Filed at Ottawa October 11, 1895.*

1. CONTRACTS—*oral bid for benefit of another at foreclosure sale—Stat-ute of Frauds.* An oral promise by a purchaser at foreclosure sale to buy in the property for the benefit of another is within the Statute of Frauds.

2. LACHES—*in redeeming from foreclosure sale—delay of fourteen years.* Delay for fourteen years by one having the right to redeem from a sale of real estate, meantime permitting interest and taxes to accumulate in large amount, although he has no written evidence, and nothing but a verbal agreement within the knowledge of aged witnesses, constitutes such *laches* as bars any right of action.

3. SAME—*equity requires good faith, conscience and diligence.* There must be cogent and weighty reasons presented why a stale demand has been permitted to become so, to induce equity to lend aid in its enforcement, since good faith, conscience and reasonable diligence must concur to call a court of equity into activity.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OLIVER H. HORTON, Judge, presiding.

A bill in chancery, under the Burnt Records act, was filed in this case in December, 1890, by Dyer N. Burnham, alleging that he was the owner of the north-east quarter of section 13, township 42, north, range 12, east of the third principal meridian, in Cook county. A large number of defendants were made parties to this bill, among them Samuel H. McDearmon, ancestor of plaintiffs in error. The bill alleged destruction by fire of the records; that about seventy-five deeds and mortgages described are clouds upon complainant's title, and that they be set aside and be declared null and void, and that title be confirmed and established in the complainant. McDearmon filed an answer setting up title in himself. Subsequently he filed a cross-petition, asking affirmative relief.

The facts as they are deduced from the pleadings, and the preponderance of the evidence, show that in 1872 the

legal title to this quarter section, which was called the
"Skokie lot," was held by Oscar B. Blake, in trust for
Samuel H. McDearmon. In June, 1872, Blake and Mc-
Dearmon secured from Burnham a $4000 loan for three
years, executing their notes and a mortgage on the Skokie
lot. The amount of this mortgage was about the full
value of the land at that time. About half the proceeds
of this loan went to Blake on account of some indebted-
ness due him, and the balance to McDearmon. In May,
1874, Blake secured an individual loan from Burnham of
$4000, executing his note, due in two years, with a mort-
gage on fifty feet on South Park avenue, known as the
"Cottage property," and which belonged to Blake. About
January, 1875, Burnham, believing that the Skokie prop-
erty was not so valuable as he had supposed, requested
Blake to write McDearmon, who had removed to Michi-
gan. Shortly afterwards the latter came to Chicago
and arranged to sell to James Ward and Ruth R. Eddy
140 acres of the land at $150 per acre, or $21,000. The
purchasers paid no part in cash, however, but the entire
purchase money was evidenced by notes. At the request
of McDearmon, Blake executed a deed to Ward and Eddy,
and they executed notes payable to Blake, secured by
a deed of trust on the 140 acres to L. Barber, trustee.
Burnham executed releases for the 140 acres sold, releas-
ing it from any lien of his $4000 trust deed. Burnham
also purchased $4500 of the Ward and Eddy purchase
money notes, and payment of them was guaranteed by
Blake and McDearmon. The balance of $16,500 of these
notes was assigned to Burnham as collateral security for
the original $4000 loan on the Skokie property, and to
indemnify him for releasing the 140 acres. Ward and
Eddy subdivided part of this land into Hiltabidle's ad-
dition to Glencoe, and made conveyances to about one
hundred grantees, who constituted most of the defendants
in the original bill filed in this case. Neither Ward nor
Eddy ever paid any part of the notes given for their pur-

chase money, and on August 2, 1876, the trust deeds were foreclosed by Barber, the trustee, on the 140 acres. Burnham, McDearmon and Blake were present at the sale, and this 140 acres of the Skokie lot was sold to Burnham for $4200. At this time the total indebtedness of Blake and McDearmon to Burnham on account of the original $4000 and accumulated interest, and the three Ward and Eddy notes endorsed and sold by them, with interest, amounted to nearly $10,000. McDearmon, then a resident of Michigan, was in Chicago on this day, attending the sale, and Burnham presented an itemized statement of amount due to him. On this same day Blake and wife executed a warranty deed to Burnham for the remaining 20 acres of the Skokie lot, on which Burnham's $4000 trust deed was still a lien. Burnham, on that day, by virtue of the Blake deed last mentioned, and the trustee's deed from Barber, held title to 160 acres of the Skokie lot. By deed dated August 3, 1876, recorded in October, 1876, Burnham conveyed the 160 acres to Blake for a consideration of $6000, taking Blake's note, dated August 3, for the entire amount, secured by trust deed on the Skokie lot to J. F. Goddard, trustee. Blake also executed another note for $4000, bearing same date, and secured by deed of trust on fifty-six lots, his individual property, known as the "Semple property." Burnham turned over to Blake the eighteen Ward and Eddy notes, at the time taking his receipt therefor. This left Burnham holding of Blake's paper $6000 on the Skokie lot, $4000 on the Cottage property, and $4000 on the Semple property. Blake appears to have been unable to meet his obligations, and in June, 1878, for an expressed consideration of $7750, he and his wife, by warranty deed, conveyed to Burnham the Cottage property. On August 5, 1879, there being default in the payment of the $6000 Skokie loan and $4000 loan on Semple property, Blake and wife executed a warranty deed to Burnham for both the Skokie and Semple prop-

erties, and Blake received back his $6000 and $4000 notes and trust deeds.

It is not entirely clear from the record what, if any, conversations or dealings passed between McDearmon and Burnham for the fourteen years following the Barber trust sale in 1876, or whether they ever had any. Following 1879, Burnham received no interest, from any source, on his money invested in the Skokie property. He paid the annual taxes, executed leases to tenants, and collected some small sums as rents each year. The land was mostly a marsh or swamp, covered, a portion of each year, with water. In 1890 McDearmon made several calls on Burnham in the course of a few days, and, without claiming any interest in or right of redemption of the land, proposed to purchase it, and failing, made some threats of litigation. In the summer of 1890 Mc-Dearmon procured a deed from Blake for the Skokie lot and Semple and Cottage properties, and, by his cross-petition filed in this cause, alleged that Blake held title to the Skokie lot as trustee for cross-petitioner, of which Burnham had notice; that at the sale by Barber, trustee, his property was bid in by Burnham with the understanding that he should convey it to Blake, who should hold it as trustee for McDearmon, as before; that from 1874 to 1890 he had frequent conversations with Burnham, and was assured by him that all rights of redemption in the Skokie lot were continued, and that he had no knowledge of the conveyance from Blake to Burnham of August 5, 1879, until some time in the year 1890, and that such deed was obtained by misrepresentation, oppression, etc. It further alleged, that at the time of the conveyance of the Cottage and Semple properties by Blake, the value thereof. was largely in excess of the consideration expressed, and that Burnham had made various promises of the right to redeem. Petitioner, McDearmon, in his cross-petition, offers to pay Burnham any amount that may be found due to effect a redemption, and asks that

Burnham reconvey to him. An amended cross-petition was subsequently filed, and on the issues being made up the cause was referred to Walter Butler, master in chancery, to take proof and report conclusions. The master reported adversely to McDearmon on the cross-petition, finding that on August 2, 1876, McDearmon had no equity of redemption in the premises which was capable of being indefinitely extended; that the equity of redemption, except as to the twenty acres, was in Ward and Eddy, and that, as against McDearmon, Burnham is seized in fee simple absolute of said north-east quarter section; that as to settlements and deeds made between Blake and Burnham as to Blake's individual property, described as the Cottage and Semple properties, they are not material to the case.

The circuit court, on hearing, overruled all exceptions to the master's report, and rendered a decree based on the substantial facts therein found; dismissed the cross-petition and amended cross-petition of McDearmon, and confirmed and established the title to the north-east quarter of section 13, etc., in Dyer N. Burnham in fee simple, as prayed for in the original bill. From the decree of the circuit court of Cook county this writ of error is prosecuted to this court.

HARDY, ESSICK & CLARK, for plaintiffs in error.

BURNHAM & BALDWIN, for defendants in error.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

It is clear from this record that about 1872 Blake had the title to the Skokie lot in question, as trustee for Samuel H. McDearmon, and it is also apparent that Dyer N. Burnham had knowledge of the fact that McDearmon had an interest of some character in the land. One of the questions suggested, therefore, is, whether or not, under the settlements and conveyances of August 2, 1876,

and August 5, 1879, Burnham became seized of the title to this 160 acres in trust for McDearmon, and the latter had the right of redemption.

The original loan of $4000 procured by these parties was, according to the evidence, about as much as this land was worth. McDearmon says that when he wanted title transferred he simply directed Blake to make deeds. By this arrangement Ward and Eddy obtained absolute title to the 140 acres, and Burnham invested additional money by the purchase of three of their purchase-money notes. At the time of the foreclosure of the Ward and Eddy trust deeds, Burnham held all the notes belonging thereto. At this sale he had the same right, if he was in any way dissatisfied with his securities, to become an absolute purchaser and acquire title to this 140 acres, as he would have to foreclose his own trust deed in case of default and become a purchaser. The consideration paid was adequate, as Burnham's indebtedness at the time was nearly $10,000, and the preponderance of the evidence is that the land was only worth from $25 to $30 per acre. Under the Barber foreclosure, therefore, Burnham became the purchaser and received a trustee's deed from Barber. By this conveyance, which was a sale of the equity of redemption of Ward and Eddy only, Burnham became seized in fee of the title to 140 acres of the Skokie lot.

It is urged that in buying Burnham was acting for McDearmon, and agreed that he would buy it in for McDearmon's benefit. The latter says that this verbal statement was made by Burnham at the time and place of the Barber sale, in the presence of himself and Blake. Blake does not testify to it, and Burnham denies it. Irrespective of that, however, the plea of the Statute of Frauds is interposed to the cross-petition. It is not alleged that such promise or agreement was evidenced by any memorandum in writing. The Statute of Frauds was therefore a bar to any relief as to the 140 acres. (*Lawson* v. *Lawson,* 117 Ill. 98; *Rogers* v. *Simmons,* 55 id. 76;

*Lantry* v. *Lantry*, 51 id. 458; *Hovey* v. *Holcomb*, 11 id. 660.) Burnham therefore took title, under the Barber convey- ance, to the 140 acres, free and clear of any equitable claim on the part of McDearmon.

On the same day as the Barber sale, Blake and wife conveyed the remaining 20 acres to Burnham, and it is alleged by McDearmon that it was done secretly, and without his knowledge or consent. There is nothing in this record that casts any suspicion on the good faith, honesty and integrity of Blake during these transactions. On the day the deed to this 20 acres was executed by Blake, McDearmon had come down from Michigan, and was stopping as a guest at Blake's house. Burnham had presented a statement, showing the amount of the indebt- edness to be in excess of the value of the land. If Blake had desired to keep secret from his friend, McDearmon, the fact that he and his wife were conveying away this 20 acres, he would hardly have selected this particular day to execute it. The only reasonable presumption to be deduced from the facts and circumstances is, that in making the settlement with Burnham, Blake executed this deed under the verbal direction of McDearmon, as he had, on occasions before, executed the Ward and Eddy deeds. Burnham, however, after acquiring title, recon- veyed the Skokie 160 acres back to Blake, and gave every opportunity for payment, as he accepted Blake's notes and trust deed for $6000, due in three years, and the pay- ment of that amount would have left the Skokie lot free and clear of incumbrance. In 1879 Blake was involved to such an extent that he could not meet his obligations. By an agreement, which Blake says was satisfactory to him, his indebtedness to Burnham was parceled out on the respective properties, and he executed to Burnham warranty deeds, first, to the Cottage property, and later to the Semple and Skokie properties, on which latter tract Burnham still held the trust deed for $6000 and accumulated interest. The record shows that the con-

sideration thus paid was adequate, and was about what the properties were actually worth at that time. Burnham took possession under his deeds, and exercised control of the property. During the period of time from 1876 no interest was paid by McDearmon, and no payments on account of his principal indebtedness. No taxes were paid by him, and no accounting, at any time, was demanded or requested of Burnham. While he alleged that Burnham told him he might have the right of redemption at any time—even in fifty years—if he paid the interest, such is highly improbable, from the fact that Burnham already had about as much money invested in the property as it was worth. But even if it be conceded that McDearmon had the right of redemption in the Skokie lot, he slept on his rights for a period of about fourteen years—from 1876 to 1890. He permitted interest and taxes to accumulate in large amounts on property the rental value of which is shown to have been only slightly in excess of $100 per year. He took no steps to assert his rights during these years, although he had no written evidence, and nothing but a verbal agreement within the knowledge of witnesses who, like himself, had passed their three score and ten years. In *Shovers* v. *Warrick*, 152 Ill. 355, this court said (p. 360): "After a long period has elapsed, courts of equity will be cautious in enforcing the specific performance of a contract when there is any real doubt about its existence and terms."

. When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale, there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience and reasonable diligence of the party seeking its relief are the elements that call a court of equity into activity. In the absence of these elements the court remains passive, and declines to extend its relief or aid. It has always been the policy to discountenance *laches* and neglect. *Carpenter* v. *Carpenter*, 70 Ill. 457; *Beach* v.

*Shaw,* 57 id. 17; *Owen* v. *Peacock,* 38 id. 33; *Blackford* v. *Wade,* 17 Ves. 87; *Smith* v. *Clay,* 3 Brown's Ch. 644; *Pratt* v. *Vallier,* 9 Pet. 416; *Prevert* v. *Graty,* 6 Wheat. 481; *Browman* v. *Nathan,* 1 How. 194.

The general rule on this question is expressed in the foregoing and a long line of other cases. This rule, when applied to the particular facts of this case, shows such *laches* and neglect on the part of the cross-petitioner as would bar any right of action and cause a court of equity to refuse him any relief, even though the right of redemption in this land had at one time existed. If cross-petitioner had any equitable rights after the transfers of 1876 and 1879, he suffered his demand to become stale, and no sufficient reasons are presented to this court why it has so become.

The Cottage and Semple properties were the individual properties of Blake. They were conveyed, in 1879, to Dyer N. Burnham by Blake, in settlement of indebtedness then owing by Blake to Burnham. The consideration was adequate, and Blake had no right of redemption. McDearmon took a deed from Blake in 1890, but acquired no title. A consideration of these two transactions is not material to the discussion of the Skokie tract.

We find no error in the admission of improper or the rejection of proper evidence by the trial court.

It was not error for the circuit court to confirm the master's report and enter the decree dismissing the cross-petition and amended cross-petition, and establishing and confirming the title, in fee simple, in this 160 acres of land in Dyer N. Burnham.

In the absence of any error in the record the decree of the circuit court of Cook county is affirmed.

*Decree affirmed.*