## Jessie M. Boyle, Appellee, v. B. R. Boyle, Appellant.

1. PARENT AND CHILD—*liability of divorced father to support minor child.* Where the parents of a minor child are divorced and no mention is made in the decree for the support and custody of the child, the father, refusing to furnish the support, is liable to the mother for her support of the child during its infancy, provided the child is, by reason of its tender years or infirmity, unable to support itself.

2. SAVING QUESTIONS FOR REVIEW—*when propositions of law are unnecessary.* The purpose of submitting propositions of law is to determine whether the trial judge entertains correct views of the principles

of law involved in the proceeding, and, hence, they are unnecessary where the ruling of the court itself showed the principles of law the court applied to the facts.

3. TRIAL—*effect of failing to mark propositions of law "given" or "refused."* Where a judge, through error or inadvertence, fails to mark propositions of law "given" or "refused," the effect is the same as if they had been formally marked and refused.

4. JUDGES—*acts necessary to qualifying.* An elected circuit judge is not qualified to do any judicial act until he subscribes to the oath of office and it is filed with the secretary of State, and until he receives his commission from the governor.

5. JUDGES—*holding over at end of term of office.* A circuit judge has a right to hold over until a new judge is elected and qualified.

6. JUDGES—*presumption of legality of acts of judge holding over.* Where a circuit judge, having a case under advisement, is defeated for re-election and enters a judgment five days thereafter it will be presumed, in the absence of a showing to the contrary, that the new judge had not qualified and that at the time the defeated judge entered the judgment he was still acting in his judicial capacity and had authority to make the entry.

. Appeal by plaintiff from the Circuit Court of Randolph county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the October term, 1927. Affirmed. Opinion filed January 20, 1928.

J. J. BULLINGTON, for appellant.

SCHUWERK & SCHUWERK, for appellee.

MR. JUSTICE WOLFE delivered the opinion of the court.

This case was commenced before a justice of the peace in April, 1926, for necessary support of an infant child of appellee and appellant, the child then being about the age of four years.

In September, 1924, the appellant was granted a divorce from the appellee on the charge of desertion. In the bill for divorce the child was not mentioned and no provision for the care and custody of the child was made by the decree of divorce.

This suit was commenced to recover money necessary for the support of the child from the time of the

divorce to April, 1926. The trial resulted in a verdict in favor of the plaintiff, Jessie M. Boyle, before the justice of the peace. The defendant appealed to the circuit court of Randolph county. The case was heard at the September term, 1926, and resulted in a verdict in favor of the plaintiff in the sum of $300.

In March, 1927, the evidence in the case was reheard and the case submitted to the court on briefs and propositions of law April 22, 1927. The Hon. George A. Crow, then judge of the circuit court presided. The case was taken under advisement and judgment entered on June 11, 1927, five days after the judicial election, at which time Judge Crow failed of re-election.

The appellant contends that under the facts of the case appellee was not entitled to recover money expended by her for the support of the child. It is admitted, however, that, if the plaintiff is entitled to recover at all, she is entitled to the sum of $300.

The appellant also contends that the court erred in refusing the findings of fact submitted by the appellant; also, that the term of office of Judge Crow expired June 6th, and on that date he ceased to be a judicial officer and had no authority to enter judgment on June 11, 1927.

The facts in this case are not in dispute. It becomes a question of law whether or not a husband—if during the divorce proceeding no mention of the care and custody of a minor child having been made—is liable to his former wife for the support and maintenance of their minor child during infancy.

In the argument of the appellant he lays stress upon the fact that it was through the fault of the wife that the divorce was procured, namely, desertion. The record shows that the wife entered her appearance in writing in the divorce proceedings and knew the charge against her by her husband in his bill for divorce. Evidently she knew that her husband was not

claiming the right to the possession of the child.  He made no attempt whatsoever to have the court decree the care and custody of the child to him.  The husband at no time seemed to concern himself about the care and custody of the child, either before or after the divorce was granted.  It is apparent from the files of the case that the wife knew all about these proceedings and was probably just as anxious to have him get a divorce as he was to get one.

Before the starting of this suit the plaintiff lived in the State of Kansas, but had recently returned to the State of Illinois.  After procuring a divorce the defendant moved to the State of Kentucky, and at the time of the hearing of the case was a resident of the State of Kentucky, but the plaintiff had procured service on him in the State of Illinois.

When the parents of a child are divorced and no mention is made in the decree for the care and custody of the minor child, under the law, the father is still bound to provide a reasonable and proper support for the said minor child, depending upon the age, ability, and circumstances of the child.  This is true whether the child is in the possession of the mother or some one else, so long as the child by reason of its tender years, or physical ability cannot earn his or her own living. *Plaster v. Plaster,* 67 Ill. 93.

The divorcing of a father of an infant child from his wife and the mother of such child, does not relieve such father from his duty to support his infant child. If the father fails and refuses such support and the mother furnishes the same, she may have an action against such father for such support and maintenance, provided the child is, by reason of its tender years or infirmity, unable to support itself. *Parkinson v. Parkinson,* 116 Ill. App. 112.

We are of the opinion that the trial court held as a proposition of law that the father under these cir-

cumstances was liable for the support of the minor child.

At the close of the evidence in the case propositions of law were submitted by the defendant which the court failed to mark "held" or "refused." The purpose of submitting these propositions was to determine whether the trial judge entertains correct views of the principles of law involved in the proceeding, and, hence, they are unnecessary where the ruling of the court itself showed the principles of law which the court applied to the facts. *Selph v. Grossman,* 192 Ill. App. 67.

Where the judge, through error or inadvertence, failed to mark such propositions "given," or "refused," the effect is precisely the same as if they had been formally marked and refused. *Calef v. Thomas,* 81 Ill. 478; *Chicago, Wilmington & Vermilion Coal Co. v. People,* 114 Ill. App. 75–97.

Judgment in this case was not entered until June 11, 1927, after the judicial election of this year. The counsel for the appellant seriously contends that by reason of said election Judge Crow lost his jurisdiction of the case on June 6th, and could not perform any judicial act after that date, and cites the case of *People ex rel. Holdom v. Sweitzer,* 280 Ill. 436, as supporting his contention.

We have carefully examined that case and find that the point raised in that case is not the same one that appellant has raised in this case. In the *Sweitzer* case it was contended that the judges elected on June 7, 1915, would be entitled to receive the increase in salary that had been given them by the act of the legislature to take effect July 1, 1915. The canvassing board did not make their complete return until July 13, 1915. The commissions were issued to the several judges by the governor and they assumed their duties of office later. The court held in the *Sweitzer* case that so far as the salary act was applicable, the judges

would be considered elected and the term of office would begin on election day, or June 7, 1915. The question of whether or not judges who had been elected before that date would still be considered judges capable of performing judicial acts was not involved in the *Sweitzer* case.

In the *Sweitzer* case the court on page 444 says: "The term of office as fixed by law is sometimes used interchangeably with the term or time of occupancy of the incumbent of such office, but it must be distinctly borne in mind that the term of office as fixed by law is entirely different from the period of time such office is held by the incumbent thereof, sometimes referred to as the term."

And again: "While this act did not fix the terms of office in the same manner or by the same language as did the acts of 1887 and 1893, its plain meaning, and the only meaning of which it is susceptible, is that the additional judges elected under that act were to be elected on the first Monday of June in the year 1915 and every six years thereafter, and the terms of their office should be six years, 'and until their successors shall be elected and qualified.' The words last above quoted clearly imply that if the said judges held over beyond election day they would be holding over beyond the terms for which they were elected and into the terms of their successors in office, for, as subsequently shown, there is nothing to prevent the judges so elected from qualifying and receiving their commissions as soon as the votes cast at the election are canvassed and the result is announced, which might be immediately after the election."

And again: "Much has been said about the provision contained in section 32 of article 6 of the constitution of 1870, that all officers mentioned in that article shall hold their offices until their successors shall be qualified, as showing that the term of a successor does not begin until he has qualified. Such pro-

vision has nothing to do with the case. While it is true that when a person elected to office for a definite period or term for some reason holds over into the term of his successor the time of holding over is a part of his original term of office, still it must be conceded that the period which he does so hold over is exactly what is implied by the term 'holding over,' as being beyond the term fixed by law and into the term following to be filed by a successor.''

And again: ''In legal contemplation an office that has once been created is necessary, and it is never vacant and is presumed to be continuously filled until it is abolished. Where there is no definite date fixed for the beginning of a term of office there is usually a short interim between the date of election and the date of qualification of the successful candidate. Such interim is of no fixed duration. It might be one day or a few days, depending upon when the judges of election in the different voting precincts complete the count of the votes cast, send in their returns to the proper authorities and the returns are canvassed and the result proclaimed, and such things necessarily depend upon inconsequential details, such as the number of votes cast, the time necessary to count them and make up the returns, the distance and means of travel between the voting places and the county seat, the distance from the county seat to the capital, and to some extent upon the diligence of the canvassing boards.''

And again: ''It will thus be seen that the votes must be canvassed and the result declared after the election, but such canvass must not be later than twenty days. It could be the day after election, so far as the law is concerned. Of course, one who was declared elected to an office would not assume the duties of such office until his commission was issued and he had taken the oath of office, where such oath

is required, after which time he would be fully qualified and competent to act.''

The constitution of our State provides, Cahill's St. Const. art. VI, § 14: ''The election for judges of the circuit courts shall be held on the first Monday in June, in the year of our Lord, 1873, and every six years thereafter.''

It further provides, Cahill's St. Const. art. VI, § 12: ''The terms of office of judges of circuit courts shall be six years.''

Article 6, section 32, Cahill's St. Const. art. VI, § 32, of our constitution provides: ''All officers provided for in this article hold their offices until their successors shall be qualified.''

Article 5, section 25, Cahill's St. Const. art. V, § 25, provides: ''All civil officers, except members of the General Assembly and such inferior officers as may be by law exempted shall before entering upon their duties of their respective offices make and subscribe the following oath.''

Art. 6, section 29, Cahill's St. Const. art. VI, § 29, provides: ''All judicial officers shall be commissioned by the Governor.''

The statutory provision relating to the terms of office of circuit judges is as follows, Cahill's St. ch. 37, ¶ 82: ''The several judges of the circuit courts of this State, and of the superior court of Cook county, shall, before entering upon the duties of their office, take and subscribe the following oath or affirmation (Oath), which shall be filed in the office of the Secretary of State.''

From the foregoing it will appear that before a judge elected on June 6th, 1927, would be qualified to do any judicial act he first would have to subscribe to the oath of office and the same should be filed with the secretary of State; second, he shall receive his commission from the governor. These two requirements are mandatory, and any act that he would per-

562    APPELLATE COURTS OF ILLINOIS.

Irvin v. Metropolitan-Hibernia Fire Ins. Co., 247 Ill. App. 562.

form before these requirements have been complied with would be a nullity.

The language used by the Supreme Court in the *Sweitzer* case, *supra*, clearly recognizes the right of a circuit judge to hold over until the new judges are elected and qualified. The office will be presumed to be continuously filled, namely, that in the interim between the election day and the time when the newly-elected judges take their oath of office and receive their commissions, there must be some one legally qualified to perform judicial acts, and no one but a former qualified judge could perform such acts.

In this case it is not contended that any of the newly-elected judges either took their oath of office or filed it with the secretary of State, or that the governor had commissioned them to act as circuit judges before June 11, 1927. In the absence of any such showing the court will presume that it had not been done, and that at the time Judge Crow signed this order on June 11th he was still acting in his judicial capacity and had authority to sign or enter this judgment.

We find no reversible error in this case and the judgment is affirmed.

*Affirmed.*