(No. 31572.
BESSIE C. CARLSON, Appellee, *vs.* IRA C. CARLSON *et al.*—
(IRA C. CARLSON, Appellant.)

*Opinion filed March 22, 1951—Rehearing denied May 21, 1951.*

JOHN F. HALL, and C. A. PEDDERSON, both of Rockford, for appellant.

MAYNARD & MAYNARD, of Rockford, (FRANK E. MAYNARD, of counsel,) for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Bessie C. Carlson, in April, 1944, filed a complaint in the circuit court of Winnebago County praying for partition and accounting of certain parcels of real estate formerly owned by her deceased husband and herself, both individually and as cotenants. In 1949, she filed an amendment to the complaint, and therein claimed that a certain parcel of real estate standing in the name of her deceased husband, Henry J. Carlson, *viz.*, lot 20 in block 1 in Knapp's Second Addition to the city of Rockford, Illinois, hereafter referred to as the Washington Street house, in fact belonged to her by reason of a resulting trust, because of her having paid the entire consideration at the time of its purchase in 1906. The principal defendant, Ira C. Carlson, is a son of the said Henry J. Carlson by a former wife. Issues were formed upon the contention made in the amended complaint; evidence heard in open court, and a decree entered by the chancellor, holding that there was

a resulting trust in the Washington Street property, whereby the entire interest should and does belong to the plaintiff, Bessie C. Carlson, and partition awarded on other properties mentioned in other parts of the complaint, concerning which no objection is made to the decree of the circuit court. Ira C. Carlson appeals directly to this court since a freehold is involved.

The facts disclose that Bessie C. Carlson and Henry J. Carlson were married in June, 1905. It was in June, 1906, the Washington Street lot was purchased. It was unimproved. Other properties were purchased in 1920 and title taken in the name of Henry J. and Bessie C. Carlson as cotenants. They lived together as husband and wife until 1928, when they separated, and later a divorce suit was filed in 1941, which apparently was undisposed of.

The circumstances surrounding the purchase of the Washington Street lot are narrated by David B. Nilson, a brother of plaintiff, as follows: He claimed that his sister worked for a lawyer in Rockford, and saved her money and left it with him until she had accumulated about $400, and after her marriage it was decided to buy a lot, and that he, as the custodian of her money, turned over $300 to her, with which to purchase the lot. He did not see the transaction, but states that Henry J. had no money, although the title was taken in the name of her husband, Henry J. Carlson.

There are circumstances which militate against the accuracy of the testimony of Nilson, since he also states that Bessie C. paid for the improvements upon the property, where there is other quite conclusive evidence that she did not. In the latter part of 1907, a contract was made between Gust Anderson and Henry J. Carlson to build a house upon the Washington Street lot for $1549. This contract was signed by Henry J. Carlson, and Anderson testified Carlson paid all of the consideration except a balance of $48, which he worked out. The statement in

the handwriting of Anderson, made on March 25, 1908, shows the details of the payments made, which, together with the testimony of Anderson, is quite conclusive that the money was actually paid by Carlson. Part of the money was undoubtedly realized from a mortgage of $1000 on the Washington Street house, borrowed from one Charles Grahn, who testified that it was all paid off by Henry J. Carlson except $20 interest, paid to him on one occasion by Mrs. Carlson.

While the plaintiff would have the court believe that Henry J. Carlson was a lazy, no-good sort of a person, the evidence shows that he was industrious, carrying on his trade of a house painter during the summer months, and working in a furniture factory during the winter months. And the evidence likewise shows that for several years he carried substantial balances in the Swedish-American Bank, so that the testimony of the brother and children of the plaintiff may be deemed somewhat prejudiced, when actual testimony of associates and written records disclose different facts.

On March 26, 1926, Henry J. and Bessie C. entered into a separation agreement to last for a period of six months, during which time he agreed to leave Rockford and not to correspond with her, or she with him, but the contract provided that as partial support for her and the children she should receive the rents from the Washington Street house, the only reservation being that she pay the taxes out of the income. On March 27, 1926, a separate contract was entered into between Henry J. and Bessie C. whereby each released and relinquished to the other all right, either during lifetime or after death, in the separate property of the other, which contract was sealed and acknowledged before a notary public, and was to be incorporated in any decree of divorce which might afterwards be decreed between the parties.

In 1941, Bessie C. filed a complaint for divorce on the ground of desertion, and Henry J. filed an answer denying desertion, and also a counterclaim demanding alimony and support, and, as opposed to the counterclaim, Bessie C. filed a reply setting forth the two contracts mentioned above, but no final decree of divorce seems to have been entered for either party. Henry J. died in February, 1944, and left all of his real estate by will to his son, Ira C. Carlson, by a former marriage. Bessie C. renounced the will and filed the complaint as above mentioned.

The plaintiff offered testimony that she had discovered the title was in the name of her husband first when the mortgage was made in 1908, and that she had made constant claims and demands to have it placed in her name, but that he with like constancy refused to transfer the property to her, or to admit she owned it. Based upon such testimony the court found that the preponderance of the evidence disclosed that Bessie C. had furnished the consideration for the purchase of the lot, and furnished the consideration for the payment of the house erected upon the lot.

The burden of establishing a resulting trust is placed upon plaintiff, and such proof must be clear, strong, convincing and unequivocal, and, some cases say, unmistakable or beyond doubt. (*McCarthy* v. *McCarthy*, 289 Ill. 365; *Curielli* v. *Curielli*, 383 Ill. 102; *Heineman* v. *Hermann*, 385 Ill. 191; *Hille* v. *Barnes*, 399 Ill. 252.) This rule is especially applicable where delay in making the claim has been so long that the death of witnesses and the loss of evidence renders it impractical or impossible to make an adequate defense. (*Streeter* v. *Gamble*, 298 Ill. 332; *Johnston* v. *Masterson*, 397 Ill. 168.) We are willing to follow the finding of the court that the preponderance of evidence shows that the lot in the first instance was paid for by Bessie C., although the court does not find that the evi-

dence was of the character and weight as required in such cases.

At the time the proof was taken, the transaction had occurred more than forty years before, and was not supported by anything other than the memory of a witness which, in other respects, is shown to be quite fallible. However, when the court goes further, and holds that the preponderance of the evidence shows that Bessie C. built and paid for the house upon the Washington Street lot, not only is there no preponderance of the evidence of this finding, but the evidence almost conclusively shows the contrary. The contractor who built the house testified; the written contract was produced; it had thereon the name of the contractor and Henry J. Carlson. The contractor likewise produced the settlement sheet, which showed the several sums paid upon the premises, the receipt was given to Henry J., and the entire amount was paid except $48, and that was later worked out by him. Likewise, with reference to the mortgage placed upon the premises, the evidence of the mortgagee is positive and conclusive that all of the sums were paid upon the mortgage by Henry J. Carlson, except the sum of $20, one interest payment, which was said to have been made by Mrs. Carlson. These witnesses were not interested and were corroborated by written evidence.

When the parties disagreed and arranged to separate, two separate contracts were entered into between them, one with respect to the separation for a limited period of time, and the other for the relinquishment of each of any interest in the property of the other. It is true that the court in its decree found this agreement was invalid as a separation agreement, but the fact nevertheless remains that it disclosed the attitude of the parties towards their property at the time, and Mrs. Carlson was not then making any claim there was a resulting trust in the Washington Street property, although this was only twenty years after the trans-

action, and this claim was not asserted until 1949, more than forty years after the transaction. Resulting trusts cannot be established upon such fragile and unsubstantial proof. For it has been frequently said that where evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon any other theory than that of a resulting trust, the latter will not be sufficiently established to be enforcible. *Wiley* v. *Dunn*, 358 Ill. 97; *Pickler* v. *Pickler*, 180 Ill. 168; *Hille* v. *Barnes*, 399 Ill. 252.

While we might be inclined to declare a resulting trust in the Washington Street property had an effort been made within a reasonable time to establish it, we are constrained to hold in the present case that it is neither just nor equitable to declare such a trust in the present instance.

The doctrine of *laches* was created by courts to promote justice, and not to protect fraud and injury, and it is said to be founded upon the maxim that equity aids the vigilant, and not those who slumber on their rights. *Laches* consists of such neglect or omission to assert a right as, taken in conjunction with the lapse of time more or less great, and other circumstances causing prejudice to an adverse party, will operate as a bar in a court of equity. (*Neidhardt* v. *Frank*, 325 Ill. 596; *Green* v. *Mail*, 362 Ill. 518.) And the general principle of equity is that the one calling upon the court for relief must show reasonable diligence, and where this is absent, a court will not grant the relief, particularly where claims rest in parol and the lapse of time and frailty of human memory may cause the truth concerning the transactions to be lost or misrepresented. *Korson* v. *Stathopulos*, 334 Ill. 193.

In *Curtis* v. *Curtis*, 398 Ill. 442, a suit in equity was filed to assert an interest in real estate claimed to have been obtained by forging the name of a minor to a deed. Action was not brought until twenty-seven years after the minor became of age, and we there held that *laches* depends upon

whether, under all of the circumstances of the particular case, the plaintiff is chargeable with the want of diligence in failing to institute proceedings before he did; and also held that, because of the acquiescence of all of the parties for this long period of time, he was barred from any relief. Likewise, we have frequently declared that stale claims are not encouraged, and that a court of equity will refuse to aid where the party has slept upon his rights. *Johnston* v. *Masterson,* 397 Ill. 168; *Stoke* v. *Wheeler,* 391 Ill. 429; *Simpson* v. *Manson,* 345 Ill. 543; and *LeGout* v. *LeVieux,* 338 Ill. 46, are cases where the delay ranged from twenty-three years to fifty years, and relief was denied for such reason. A claim almost precisely parallel with the instant case was summarily denied by this court because of unreasonable delay. *Collier* v. *Beers,* 106 Ill. 150.

In the present case, according to the testimony of the brother, the plaintiff was fully aware in 1908, the year the house was completed, of the fact that the deed to the Washington Street lot was taken in the name of the husband. It is said she made frequent complaints but she never brought a suit in equity. She knew these facts in 1926, when they executed mutual releases of each other's property and the title to the lot still stood in the husband's name, and she invoked these releases to defend liability to support her husband when she filed her divorce suit in 1941, but apparently never pursued it to a decree.

One of the elements entering into *laches* is the injury that may be caused to the opposite party by the delay. Any time up to the time of the death of the husband in 1944, had Mrs. Carlson brought her suit, he would have been able to testify and show a good defense to claims made by plaintiff. We are satisfied that an inference arose, after they executed their mutual relinquishments of rights in the property of the other, that a final agreement as to respective properties had been made, and if she was asserting a resulting trust it would have been brought forth at

that time. The fact that she filed her bill for partition without first asserting any ownership in this property, and only amended her bill some four or five years later, causes us to have a grave doubt of the soundness and equity of her claim.

We are satisfied that this is a case where the plaintiff has not sustained the burden of proving a resulting trust in the whole property, and as to the small part in which there is some proof, she has slept upon her rights so long that she is not entitled to a decree declaring a trust as against the interests of the husband's devisees, after a lapse of more than forty years.

The decree of the circuit court of Winnebago County, insofar as it declares a resulting trust in favor of appellee in the Washington Street property is reversed, and the balance of the decree is affirmed, and the cause is remanded with directions to proceed in conformity with this opinion.

*Affirmed in part and reversed in part*
*and remanded, with directions.*

Mr. JUSTICE FULTON, dissenting.