(No. 34117.—

LELAND B. ELLIOTT *et al.,* Appellees, *vs.* THE PURE OIL COMPANY, Appellant.

*Opinion filed November 26, 1956—Rehearing denied Jan. 23, 1957.*

W. D. DEAKINS, JR., of Chicago, and FRED McCOLLUM and SMITH, McCOLLUM & RIGGLE, both of Flora, for appellant.

KERN AND PEARCE, of Carmi, for appellees.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This is an action in equity for the cancellation of oil leases for failure to develop and produce oil on the properties. The complaint was in three counts each involving a separate tract owned and leased by plaintiffs to defendant in 1936. Upon hearing, the circuit court of Wayne County entered a decree for the defendant as to counts 1 and 3. As to count 2, the court entered an alternate decree that unless the defendant should commence to drill a well on the east 10 acres of the tract within 60 days from the date of the decree, and drill the same with reasonable diligence to completion to test the Rosiclare formation, the lease would be cancelled as to the said east 10 acres. From this portion of the decree, the defendant appeals.

Tract No. 2 involved in count 2 is located in Wayne County and consists of 20 acres which was leased to defendant by plaintiffs in 1936. In 1945 the defendant drilled three wells in the immediate area to the Rosiclare formation. One well was drilled in the middle of the west 10 acres of plaintiffs' 20-acre tract. This well produced 5589 barrels of oil until 1948 when it was plugged. Defendant then drilled in the same location to the Aux Vases formation which produced 32,371 barrels from 1948 to 1953. In 1953 defendant resumed pumping from both Rosiclare and Aux Vases formations, which resulted in a combined production of 5977 barrels through 1955.

Defendant in 1945 also drilled a well to the Rosiclare formation on the Ruble tract, offsetting the east 10 acres of plaintiffs' tract. This well produced 201,717 barrels until it was plugged in 1952. Defendant also, in 1945, offset plaintiffs' east 10 acres by drilling a well on the Barth tract immediately south of the east 10 acres of the plaintiffs. This well produced 191,685 barrels from the Rosiclare formation up to the time of trial. There is further evidence that in 1954 the National Associated Petroleum Company drilled two wells to the Aux Vases formation

on the Ruble tract immediately to the east of plaintiffs' east 10 acres, which wells are still producing. The evidence also establishes the drilling of offset wells on the Duke tract immediately to the north of the plaintiffs' east 10 acres.

Defendant introduced the testimony of one Finley, a geologist employed by the defendant, who had studied the subsurface structures underlying plaintiffs' land. This witness testified from various exhibits showing the substructure of the area involved. It would unduly lengthen this opinion to fully discuss all of the geological aspects of his testimony. From his studies and tests he determined that there would be no commercial production from the Aux Vases, the McClosky, the St. Genevieve or the O'Hara formation in the east 10 acres of plaintiffs' tract No. 2. We find in the record no substantial contradiction of these opinions of the witness, nor do we find that they are disputed in argument.

However, this witness's testimony was not so clear in regard to the oil production from the Rosiclare formation. He testified that the well on the west 10 acres of the plaintiffs' tract was not commercially good from the Rosiclare formation, but that all of the oil would eventually be recovered through the existing wells in the general area. He did admit that it was possible that oil could be recovered from an additional well and that possibly not all the oil could be recovered from the tract through the well drilled on plaintiffs' west 10 acres.

Defendant's exhibit 5, discussed by witness Finley, showed the Rosiclare lime porosity in the general location. From that exhibit it appears that the porosity of the east 10 acres of plaintiffs' tract is superior to that of the west 10 acres where the well was drilled. This fact would tend to endow said east 10 acres with greater commercial possibilities. Finley further testified that there was a water movement that he thought would eventually bring oil in the Rosiclare formation to plaintiffs' tract No. 2. How-

ever we note that such a water movement or encroachment is from the east and would first hit the east 10 acres of plaintiffs' tract. Finley testified that in 1952 at the request of the plaintiffs, he examined the possibilities of further drilling; that he concluded that such drilling would not be commercially feasible, partly for the reason that the defendant already had two producing Rosiclare wells on adjacent tracts.

It is plaintiffs' contention that the proof of production of large quantities of oil from offset wells on adjacent premises, and the refusal of defendant to protect against drainage establishes a *prima facie* case in favor of cancellation. They contend that when oil has been discovered on lands, it is the duty of the defendant, express or implied, to reasonably develop the premises; and that when there are wells on such lands which produce oil to a commercial extent it is the duty of defendant to protect the leased premises against drainage, particularly when the offset wells are those of the same defendant.

Defendant contends that the burden is upon the plaintiffs to establish that the defendant failed to do what a reasonable and prudent operator would do in developing and producing the lease. They argue that there is no evidence in the record to sustain this burden of proof. They further contend that the drilling of another well on the east half of tract No. 2 would be in violation of the rules and regulations of the Illinois Department of Mines and Minerals; that the evidence in the record shows that a new well would not be commercially feasible; and that if the plaintiffs have been injured at all, they have an adequate remedy at law. Defendant also raises the defenses of *laches* and estoppel.

We feel that the evidence in the record sufficiently proves a *prima facie* case for the plaintiffs. It establishes that defendant has had two very profitable wells under lease, which offset the plaintiffs' tract No. 2, and which

have drawn substantial quantities of oil from the Rosiclare formation, one of which is still producing; that a water encroachment exists to the east of plaintiffs' tract No. 2 which is moving westward and will bring oil to the Rosiclare formation on the east 10 acres and ultimately to the west 10 acres of tract No. 2; that in 1936 one well was drilled on plaintiffs' tract No. 2 and no further wells have been drilled thereon; and that it is reasonable to believe that there is oil in commercial quantities in the Rosiclare formation under plaintiffs' land. The defendant possessed technical information concerning the oil underlying the land in this area, and, within human limitations, knew the capacity of this land to produce oil. It was in control of the premises and had the right to drill. The defendant, not the plaintiffs, was in the position to know whether or not further commercial development of this acreage was practicable. We feel that this case comes clearly within the theory of the rule we announced in *Stoddard* v. *Illinois Improvement Ballast Co.* 275 Ill. 199, at pages 203 and 204, where we said: "The argument of plaintiff in error that the burden of proof was upon defendant in error to establish that the demised premises contained stone suitable for quarrying purposes which could have been profitably removed by due diligence and skill, is not tenable. Plaintiff in error was in possession of the property and the quarrying machinery left there by the former lessees. It understood the business of quarrying and selling stone and knew the capacity of the machinery on the premises and what machinery was required to successfully quarry the stone. * * * Plaintiff in error from the very nature of the case was or should have been in possession of all the facts to enable it to show that the quarry could not be operated at a profit, and the law therefore placed that burden of proof on it as an affirmative defense."

In order to defeat the plaintiffs' *prima facie* case, the burden of proceeding with the evidence devolved upon the

defendant. It became incumbent on the defendant to show that the premises could not be developed for oil with profit, or that some other reason existed which should relieve the defendant from proceeding with the development of the oil lands. (*Daughetee* v. *Ohio Oil Co.* 151 Ill. App. 102.) Under the facts of this case, the lower court properly entered its alternative decree of cancellation without placing on plaintiffs the burden of proving that the defendant could have drilled an additional well with a reasonable expectation of profit.

An oil lease primarily contemplates production and a royalty consideration. Consequently we have held that there is implied under the terms of such lease an obligation on the part of the lessee to use reasonable diligence to develop the demised premises so long as the enterprise could be carried on at a profit. The lessee is not the sole or controlling arbiter of the extent to which operations should be carried, and the express or implied covenants of the lease should be construed by the standards of what is reasonable, considering the duty of both lessee and lessor. *Ohio Oil Co.* v. *Reichert,* 343 Ill. 560; *Daughetee* v. *Ohio Oil Co.* 263 Ill. 518.

We turn next to the question of whether all the evidence in the record shows that defendant did use diligence and exercise reasonable judgment in failing to further develop tract No. 2. Upon an analysis of the evidence in the record, we feel it is clear that there was no duty on the defendant to attempt to produce oil from the Aux Vases formation or the O'Hara, McClosky, or St. Genevieve formations. However, the evidence in the record reasonably indicates oil in commercial quantities in the Rosiclare formation underneath the land of the plaintiffs. It therefore becomes necessary to examine the reasons why the defendant failed to develop this formation. Defendant here relies strongly upon a rule and regulation of the Department of Mines and Minerals of the State of Illinois

(Rule IV(1)(A)(1)(b).). This rule provides that there shall be a minimum of 20 acres of surface area to a well drilled or deepened for production of oil from a limestone formation. It is conceded that the Rosiclare formation is a limestone formation. This defense was not pleaded by the defendant but was introduced in evidence over objection by witness Finley who testified that he knew of such rule and that the defendant observed it. It does not appear, however, that this point was argued in the trial court and it is clear from Finley's testimony that the decision to refuse to drill on the east 10 acres of plaintiffs' tract was not based upon this limitation. From the state of the pleadings and the record, it cannot be determined whether a permit could have been obtained to drill this well; nor does it appear that a permit would not have been obtained automatically by capping the nonproductive Rosiclare well on the west 10 acres of plaintiffs' tract. The record indicates that this defense was an afterthought and had nothing to do with the exercise of discretion by defendant. This defense must fail for the further reason that it was not pleaded or argued below. *Bryant* v. *Lakeside Galleries Inc.* 402 Ill. 466, 473 and 474; *Hunsley* v. *Aull*, 387 Ill. 520, 523.

The only other reason for the failure to drill a well into the Rosiclare formation on the east 10 acres of plaintiffs' tract was that most of the oil in the Rosiclare formation could be drained from the area by the combined wells which the defendant had drilled under its various leases. These include the small production well on the west 10 acres, and the two highly profitable Rosiclare wells on the Ruble and Barth tracts. The plaintiffs' evidence, the defendant's exhibit 5, and the testimony of Finley furnished a reasonable basis for concluding that a Rosiclare well on the east 10 acres would be commercially profitable. The trial court saw and heard the witnesses testify.

The decree of a chancellor will not be reversed unless

it is palpably contrary to the weight of the evidence. We believe that the evidence in the record sustained the chancellor's judgment in determining that defendant had violated the implied duty to develop the premises and protect from drainage. *Evangeloff* v. *Evangeloff,* 403 Ill. 118, 123; *Greer* v. *Carter Oil Co.* 373 Ill. 168, 179; *Ohio Oil Co.* v. *Reichert,* 343 Ill. 560, 566 and 567.

Defendant next contends that regardless of any breach in the implied covenant to develop, that forfeiture is not the proper remedy. In support of that contention, defendant relies on *Poe* v. *Ulrey,* 233 Ill. 56. In that case the lease provided for the drilling of a well on lessor's land within 12 months or for the payment of delayed rentals. In addition, it provided for the drilling of a test well on the block of leased land, which included the lease under consideration, on or before a certain date or that the lease be forfeited. The test well was actually drilled, but the other drilling covenant was not complied with. The lessee elected to pay the delayed rentals and made a tender. The court there held that because of the fact that the parties had provided for an express forfeiture for failure to complete a test well, the parties had excluded any other grounds of forfeiture. The lease in the case at bar provides: "and this lease shall never be forfeited for non-payment of any rental due until after at least 10 days' written notice  *  *  *." This clause of the lease implies the right of forfeiture for other just causes. We do not think that plaintiffs in this case have an adequate remedy at law, nor have they excluded the remedy of forfeiture. In *Powers* v. *Bridgeport Oil Co.* 238 Ill. 397, at pages 402 and 403, we held: "There can be no force, we think, in the contention that the defendant in error can be fully compensated and a forfeiture prevented by the payment to defendant in error for the oil drawn from the Pemberton land through the wells upon the Willie land, as it would, in the very nature of things, be very difficult, if not impossible, to establish by proof

the amount of oil which the defendant in error had lost by the failure to offset the wells upon the Willie land, and, obviously, the provisions found in the lease providing for a forfeiture were put into said lease solely with a view to afford defendant in error a remedy in the event that the plaintiffs in error refused to protect the Pemberton land from wells located upon adjoining lands. * * * It is equitable that a party operating under an oil lease should be required promptly to develop the oil in the land which he controls. Especially is this so where the party holding the lease controls adjoining lands from which he is taking oil."

We further distinguished the case of *Poe* v. *Ulrey* in the recent case of *Hughes* v. *Ford,* 406 Ill. 171, where we held that forfeiture was a proper remedy in a case similar to the one before us. In the *Hughes case,* we also discussed the case of *Daughetee* v. *Ohio Oil Co.* 263 Ill. 518, wherein this court held that the remedy of a lessor for breaches of covenant of a lease is not forfeiture but an action for damages, and at page 180 and 181 stated: "In that opinion we did not say or indicate that the only remedy for the breach of the covenants in such a lease, was an action for damages but we merely held that an action for damages was available to the lessor before the end of the term."

We hold forfeiture of the lease to be a proper remedy in this case. Equity was evolved to escape the technicalities and rigidity of the common law. (30 C.J.S., par. 12, page 331; 19 Am. Jur., par. 460, page 318.) We decline to become so involved in the theories of actions and remedies as to render this court impotent to deal with the problem before it.

Defendant further argues that plaintiffs are estopped in this case by the fact that they accepted royalty division checks and signed a division order in 1951. Defendant cites no authority for this proposition except *Corey* v. *Sun-*

*burst Oil Co.* 72 Mont. 383, 233 Pac. 909. That case is inapplicable here. It holds that a division order is a quasi-contract between the owners and the oil purchasers, is conclusive as to the designated interests owned, and operates as an estoppel if such interests are subsequently denied. In the instant case, the receipt of either their just rentals from the premises, or their royalties from the producing well, would not estop the plaintiffs from taking action to compel the defendant to fulfil its duty to drill an additional well to protect plaintiffs' premises from drainage, or bar partial forfeiture of the lease in event of defendant's' failure to so do.

Nor do we see any merit in defendant's claim of *laches*. *Laches* is only available as a defense in an equitable proceeding when, by delay or neglect to assert a right, the adverse party is lulled into doing that which he would not have done, or omitting to do that which he would have done, with reference to the property had the right been promptly asserted. (*Gaffney* v. *Harmon,* 405 Ill. 273, 280; *Rogers* v. *Barton,* 386 Ill. 244, 253.) We believe that the record is devoid of any evidence to show a change of position taken by defendant to its detriment. Defendant has consistently insisted that it was not required to drill the well. There is no justification for the application of *laches* to the present case.

On the record in this case, it appears that the decree of the chancellor is amply supported by the evidence and it will not be disturbed. The decree of the trial court is accordingly affirmed.

*Decree affirmed.*