MARILYN GILL, Plaintiff-Appellee, *v.* ROBERT GILL, Defendant-Appellant.

(No. 56342; ▮▮▮▮▮▮▮▮▮

First District—November 15, 1972.

DIERINGER, P. J., dissenting.

Belkind & Polikoff, and Bochte, Camodeca & Timpone, both of Chicago, for appellant.

Gomberg, Missner & Schaps, of Chicago, (Sidney D. Missner, of counsel,) for appellee.

Mr. JUSTICE ADESKO delivered the opinion of the court:

This is an appeal by defendant, Robert Gill, from the entry of an order granting post divorce decree relief for child support. The issues on review are:

1. Whether the plaintiff should be barred by the doctrines of *laches* or acquiescence, from proceeding against defendant for child support;

2. Whether a defendant, who is personally served 15 years after the original entry of a divorce decree, in which service was by publication, may be ordered to pay retroactive child support; and

3. Whether the amount of child support awarded was proper.

The facts are as follows:

Plaintiff, Marilyn Gill, was married to defendant on April 10, 1948. On March 21, 1956, plaintiff filed a complaint for divorce on grounds of physical cruelty and desertion. Service upon defendant was by publication. On June 28, 1956, a decree for divorce was entered and plaintiff was

awarded custody of the couple's five year old son. The question of alimony and child support payments were specifically held in abeyance until further order of court.

In April 1971, defendant communicated with his child for the first time since he had left the marital home and it was at this time that plaintiff first learned of defendant's whereabouts. On May 27, 1971, plaintiff obtained personal service upon defendant of a summons and a copy of the original complaint for divorce. Defendant and his attorney were also notified on that date that plaintiff would petition the court for child support from June 28, 1956, the date of the decree, to the present and for attorney's fees. A hearing on plaintiff's petition was held on July 7, 1971, at which time defendant was represented by counsel. After hearing testimony that the child was supported totally by plaintiff from and before June 28, 1956, to June 28, 1969, when he graduated from high school and began working, the court granted plaintiff's petition for child support. The court allowed support of $20.00 per week and ordered defendant to pay $13,520 plus $500.00 in legal fees to plaintiff. It is from that order that defendant appeals.

Defendant's initial contention on appeal is that plaintiff should have been barred from obtaining a judgment for child support by the doctrines of *laches* or acquiescence. Defendant contends that by waiting nearly 15 years before seeking an award for child support, plaintiff has slept upon her rights for an impermissibly long time and by so doing defendant contends that she has impliedly consented to defendant's non-payment of support.

■■ *Laches* is such neglect or omission to assert a right, taken in conjunction with a lapse of time and other circumstances causing prejudice to an adverse party, as will operate as a bar to a suit. (*People ex rel. Cronin v. Cahill*, 118 Ill.App.2d 18, 254 N.E.2d 161.) To charge a party with *laches* in the assertion of an alleged right it is essential that he should have had reasonable knowledge of all the facts necessary to the assertion of his claim. (*Tarpoff v. Karandjeff*, 17 Ill.2d 462, 162 N.E.2d 1.) Prejudice or injury to the adverse party is also a requisite element of *laches* (*Pyle v. Ferrell*, 12 Ill.2d 547, 147 N.E.2d 341; *Carlson v. Carlson*, 409 Ill. 167, 98 N.E.2d 779), and where there is no change in the situation of the parties to the detriment of the adverse party due to the delay, courts will not apply the doctrine of *laches*. *Elliott v. Pure Oil Co.*, 10 Ill.2d 146, 139 N.E.2d 295.

■■ · Whether a party has been guilty of *laches* is a question addressed solely to the sound discretion of the trial court. (*Johnson v. Central Standard Life Insurance Co.*, 102 Ill.App.2d 15, 243 N.E.2d 376.) The decision of the trial court will not be disturbed upon review unless the determina-

tion of the court is so clearly wrong as to constitute an abuse of discretion. *Johnson v. Central Standard Life Insurance Co.*, 102 Ill.App.2d 15, 243 N.E.2d 376; *Trustees of Schools of Tp. No. 38 No. v. City of Chicago*, 308 Ill.App. 391, 32 N.E.2d 180.

■■ In the instant case, plaintiff had no knowledge of the whereabouts of defendant when she obtained a decree of divorce in 1956. The decree specifically provided that "* * * the question of alimony and child support payments be held in abeyance until further order of this court." Plaintiff testified that the first time she had any knowledge of defendant's whereabouts was when defendant on April 1, 1971, contacted his child for the first time since the divorce. On May 27, 1971, plaintiff had defendant personally served with summons from the original divorce proceeding and also with notice of instant action for child support. Defendant offered no evidence to demonstrate that his position had been substantially detrimentally changed by the delay in meeting his obligation to support his child. After careful review of the record in the instant case, we must therefore conclude that the trial court did not abuse its discretion when it found that plaintiff was not guilty of *laches.*

Defendant next contends that the trial court erred in granting retroactive child support. Defendant contends that the court must have personal jurisdiction over a party before it can enter a judgment for support against that party. Defendant then maintains that as the court in the instant case acquired personal jurisdiction over defendant only in 1971, no judgment for support arising before that time could be entered against him.

■■ The duty of the father to support his minor child arises out of a natural relationship. (*Dwyer v. Dwyer*, 366 Ill. 630, 10 N.E.2d 344.) When the parents of a child are divorced and no provision is made in the decree relieving the father of his obligations, the father remains bound to provide reasonable and proper support for the minor child, depending upon the age, ability and circumstances of the child. This is true as long as the child by reason of its tender years or physical ability cannot earn his own living. The divorce decree does not relieve the father of his duty to support his minor child. *Sturdy v. Sturdy*, 67 Ill.App.2d 469, 214 N.E.2d 607; *Boyle v. Boyle*, 247 Ill.App. 554.

In the case at bar, defendant was obligated to support his child during all of the years here in question during which time the child was a minor and not self-supporting. Defendant made no attempt to satisfy his obligation to support his child during the years in question, and the fact that plaintiff was unable to locate defendant during that period so as to bring him personally before the jurisdiction of the trial court, in no way abrogates defendant's obligation to support his minor child.

■■ When plaintiff subsequently did locate defendant and promptly brought him before the jurisdiction of the trial court, it was determined that defendant was obligated to support his child during the years in question and that he had failed to do so. It was determined that plaintiff had in fact worked during all of the years in question to provide the requisite support for the minor child and a judgment for the value of the support which defendant should rightfully have provided, but which plaintiff in fact was required to provide, was entered for plaintiff against defendant. We find that the trial court did not err in entering judgment for the past support which defendant failed to provide.

Defendant's final contention on appeal is that the amount the trial court awarded for child support was improper. Defendant contends that plaintiff failed to prove the amount of support that she was entitled to for the welfare of the minor child in the years in question.

■■ The determination of support payments for the upbringing of a minor child is within the discretion of the trial court and the determination of the trial court in such matters should not be disturbed upon review unless manifest injustice has been done or unless it is against the manifest weight of the evidence. *Carroll v. Carroll*, 116 Ill.App.2d 172, 252 N.E.2d 759.

■■ In the instant case the trial court heard evidence from both plaintiff and defendant as to the expenses incurred in the support of the minor child and as to the income earned by defendant during the period in question. Plaintiff testified that it cost her approximately $25.00 per week to raise her minor child and defendant testified that his salary over the period rose from $4,000 to the $13,000 he earned at present. Our review of the record reveals that the trial court did not abuse its discretion in determining that $20.00 per week for the period in question was reasonable support payment.

. For the foregoing reasons, the judgment of the Circuit Court of Cook County is hereby affirmed.

Judgment affirmed.

BURMAN, J., concurring.

Mr. PRESIDING JUSTICE DIERINGER dissenting:

I respectfully dissent from the majority opinion for the following reasons.

As stated in the majority opinion, the plaintiff obtained a divorce from the defendant by publication on June 28, 1956, and was awarded custody of the couple's 5-year old son. No provision was made in the decree for child support for the obvious reason the court had no jurisdiction over the

defendant, and such support orders are *in personam*. Fifteen years later, on May 27, 1971, the defendant was served with a summons and a copy of the original complaint for divorce. There was no petition for the support of the son, who had graduated from high school and was married and working. This was the first time the court had jurisdiction over the defendant in person.

At a hearing on July 7, 1971, it appeared the defendant owns a home in Cook County, pays real estate taxes, is a registered voter, has a home telephone, and drives an automobile. The plaintiff admitted that approximately two years after the entry of the decree, the defendant's mother visited with her and that she (the plaintiff) spoke to the defendant; that she saw his automobile; and she knew he was in the jurisdiction but she made no effort to contact him regarding support money for the child. She was working and elected to raise the child herself. Defendant, Mr. Gill, is remarried and has a family.

After the hearing on July 7, 1971, the trial court entered a *nunc pro tunc* order dating back to June 28, 1956, the date of the entry of the default decree, and ordered the defendant to pay the plaintiff the sum of $13,520 for child support from June 28, 1956, to June 28, 1969, the date upon which the boy graduated from high school.

In my opinion the court was without jurisdiction to enter a *nunc pro tunc* order against the defendant. The Supreme Court of Illinois stated in *In re Estate of Bird* (1951), 410 Ill. 390:

> "A *nunc pro tunc* order has been defined as 'an entry now for something previously done, made to make the record speak now what was actually done then.' [Citation.] It is a device to supply an omission to enter of record an order actually made, but omitted from the record by the clerk."

Applying this definition to the instant case, it becomes readily apparent the order of July 7, 1971, was not to supply an omission in the record of the decree of 1956, but rather to create, as of the time of the entry of the decree, a provision which was not in fact made and which could not in law have been made.

As was observed by the Appellate Court in *Briggs v. Briggs* (1939), 299 Ill.App. 577:

> "It is clear that the court was without authority or jurisdiction to enter a *nunc pro tunc* judgment as there was nothing to even suggest a judgment in the proceedings of the court to which the *nunc pro tunc* order refers. Indeed the record affirmatively shows that no judgment was entered or intended. In *Wiggins v. Union Trust Company*, 266 Ill.App. 560, we said: 'The office of an order *nunc pro tunc* is only to supply omission in the record of an order which

was really made but omitted from the record. If an order is actually made by the court, but there is a failure to enter it, the court may correct the mistake in failing to enter the order, and make the record show the order which the court actually made as of the time it was made. No court has a right to create an order by that method or to supply an order which was never in fact made. A *nunc pro tunc* order cannot be made to supply an omission to make an order, but only an omission in the record of the order.' "

The route by which the trial court reached its destination is so palpably contrary to all recognized procedure that its order of July 7, 1971, is void and should be reversed.

Furthermore, child support is designed and required for immediate support of the child and, absent an order to pay, there is no authority invested in the court to retroactively compute child support and enter a judgment for the amount so computed as if it were liquidated damages. In the instant case the trial judge allowed $20 a week, retroactively, for thirteen years, and arrived at a figure of $13,520. At the time the order was entered the child had been emancipated, was married, and was working, and there was no immediate need for child support, neither could it be had. That the trial court was confused over his authority to enter *personam* orders against the defendant prospectively only is borne out by the record where, in colloquy between the defendant's attorney and the court, it is said:

> "The Court: This judge sitting here today does have jurisdiction.
> Mr. Camodeca: Prospective jurisdiction.
> The Court: I have jurisdiction, everything is prospective.
> Mr. Camodeca: Your application is retroactive, your Honor.
> The Court: Well, no; it will be prospective. He will prospectively pay her $20.00 a week for thirteen years; with $1,040.00 for a year, it would be $13,520.00."

It is quite obvious the trial court entered a retroactive order and ordered prospective payment, which does not give him jurisdiction to enter the retroactive order. He arrived at the amount of money by simply asking the plaintiff, Mrs. Gill, how much it cost her per week, during all this period of time, to raise the boy. This, of course, was entirely wrong, because he had no authority to enter a money judgment in this manner.

I am convinced the doctrine of *laches* applied, because the plaintiff made no effort to bring the defendant into court for fifteen years. It was an abuse of the discretion of the court in denying that the doctrine of *laches* applied. Its existence depends on whether, under all the circumstances of a particular case, a plaintiff is chargeable with want of due diligence in failing to institute proceedings before he did. (*Bowman v.*

*Armour and Co.* (1959), 17 Ill.2d 43; *McCartney v. McCartney* (1956), 8 Ill.2d 494.) It is, unlike the statute of limitations, not a mere matter of time but principally a question of the inequity of permitting the claim to be enforced. (*McKey v. McKean* (1943), 384 Ill. 112.) *Laches* is, therefore, such neglect or omission to assert a right, taken in conjunction with a lapse of time and other circumstances causing prejudice to an adverse party, as will operate to bar relief in equity. *Carlson v. Carlson* (1951), 409 Ill. 167.

As observed in *McDearmon v. Burnham* (1895), 158 Ill. 55, referring to delay covering a period of almost fifteen years:

> "When a court of equity is asked to lend its aid in the enforcement of a demand that has become stale, there must be some cogent and weighty reasons presented why it has been permitted to become so. Good faith, conscience, and reasonable diligence of the party seeking relief are the elements that call a court of equity into activity. In the absence of these elements the court remains passive, and declines to extend its relief or aid. It has always been the policy to discountenance laches and neglect."

I am concerned over the application of the majority opinion in the instant case because I anticipate the opening of floodgates of decrees, entered upon publication, if the plaintiff is allowed to come into court fifteen years later, or twenty or twenty-five years later, whenever she takes a notion, and obtain a judgment against her former husband, as in the instant manner. I think she should be required to exercise diligence in seeking support money when it is needed, otherwise she has elected to support the child, as in the instant case, and she should be precluded from asking for retroactive orders for support.

I would reverse the order of July 7, 1971.